**Donna MILLINER, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civil Action No. 92–187 SSH.**

United States District Court,
District of Columbia.

July 8, 1996.

4. The DEA withheld these names under Exemptions 7(C) and 7(F).

John J. Jamnback, Boraks & Jamnback, Washington, DC, for plaintiff.

Jesse P. Goode, Assistant Corporation Counsel, D.C., Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Plaintiff, a DS–6 employee of the District of Columbia government, filed this discrimination action in 1992. She alleged in her complaint that the District of Columbia and her agency-employer, the Department of Human Services Alcohol and Drug Abuse Services Administration ("ADASA") (now known as the Addiction Prevention and Recovery Administration), discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), and in violation of the D.C. Human Rights Act,

D.C.Code Ann. § 1–2501 *et seq.* (1991 Repl. & Supp.1995), when they failed to promote her to a DS–7 (or "Grade 7") position upon her return from maternity leave. Plaintiff also alleged that defendants retaliated against her after she filed an EEOC charge, also in violation of Title VII.

On May 17, 1993, this Court dismissed ADASA as a defendant, because ADASA, as an agency of the District of Columbia, is *non sui juris.* *See Hinton v. Metropolitan Police Dep't Fifth District,* 726 F.Supp. 875 (D.D.C.1989). *Milliner v. District of Columbia,* Civ. No. 92–187, 1993 WL 837384 (D.D.C. May 17, 1993). The Court also dismissed plaintiff's D.C. Human Rights Act claim against the District of Columbia; plaintiff, as an employee of the District, cannot bring a private cause of action against the District pursuant to the D.C. Human Rights Act. *Id.* (citing *Dougherty v. Barry,* 604 F.Supp. 1424, 1442 (D.D.C.1985)).

On December 12, 1994, this Court denied plaintiff's request for a jury trial and dismissed plaintiff's claims for compensatory damages. The Court found that the recent decision of the United States Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), governed plaintiff's case and precluded allowing a jury trial and compensatory damages. *Milliner,* Civ. No. 92–187, 1994 WL 905958 (D.D.C. December 12, 1994). On August 10 and 11, 1995, this Court conducted a bench trial of plaintiff's Title VII claim against the District of Columbia. The parties submitted proposed findings of fact and conclusions of law in December 1995 and January 1996.

This Opinion sets forth the Court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a). Based on the credible evidence submitted at trial, the Court finds that the District of Columbia did not discriminate against plaintiff because of her pregnancy, nor did it retaliate against her in any way following plaintiff's filing of an EEOC charge.

## Findings of Fact

Plaintiff Donna Milliner was initially hired by the District of Columbia in May 1987, as an employee of a temporary agency with

which ADASA had contracted for clerical services. In November 1987, plaintiff was selected for a term appointment with ADA-SA. Term appointments last for approximately thirteen months; after serving one term appointment and part of a second, in August 1989, plaintiff became a career employee with ADASA at the DS–6 level. Prior to becoming employed with ADASA, plaintiff had worked for the United States Office of Personnel Management ("OPM"), but she was disciplined and eventually terminated from OPM for repeated episodes of tardiness and absences without leave.

Plaintiff's immediate supervisor at ADASA was Linda Holifield, who joined ADASA in December 1987. Although plaintiff and Holifield initially did not get along well, they apparently resolved their differences in early 1988. Plaintiff testified at trial that Holifield gave her an "excellent" evaluation for the time period covering April 1988 through March 1989, but neither plaintiff nor defendant produced a copy of that evaluation at trial.

In late 1988 or early 1989, plaintiff and Holifield discussed the possibility of a promotion for plaintiff, from the DS–6 position she currently occupied to that of a DS–7. Holifield encouraged plaintiff to continue performing well at her job, and if plaintiff continued to show interest and progress, Holifield would assist her in applying for the promotion. In late August and early September 1989, Holifield submitted an "Op–8" form and a "Form 52" request for personnel action to the District of Columbia Office of Personnel ("Office of Personnel"), requesting that plaintiff be promoted to a DS–7 Program Assistant position within the agency. The Program Assistant position apparently did not exist prior to Holifield's request; in effect, what Holifield attempted to do was create a new Program Assistant position using plaintiff's Clerical Assistant position number and duty description.

The Office of Personnel rejected the proposed promotion several times, for several reasons. First, the documents submitted by ADASA to the Office of Personnel were not approved or signed by the required agency officials. Second, the Office of Personnel rejected the proposed promotion and change in grade level because (1) the position description submitted was incorrect; (2) the Form 52 submitted was incorrect; (3) the position numbers were the same for plaintiff's current Clerical Assistant position and for the Program Assistant job being sought for her; and (4) the Program Assistant position Holifield was trying to create for plaintiff overlapped substantially with the duties of other employees.

Some time after August 1989, the Office of Personnel also instituted a hiring freeze, and for at least some period of time, also had no budget from which to hire new employees (or promote current employees). In addition, Holifield testified that plaintiff's performance took a turn for the worse some time prior to her departure on maternity leave. The Court fully credits Holifield's testimony on this point.[1]

In addition, plaintiff testified that she knew that, under the relevant District of Columbia regulations, she would have to compete for any open Program Assistant position. While Holifield attempted in 1989 to create such a position for plaintiff, plaintiff submitted no evidence that such a position was indeed created, budgeted for, approved by the Office of Personnel, and opened to competition. Plaintiff also submitted no evidence that, had a Grade 7 position been available, she would have been the most qualified applicant for the position. Plaintiff also testified that she had not filled out the required Form 171 which accompanied any application for an open position. Nor had plaintiff requested a "desk audit" of her current position, which would have allowed the Office of Personnel to determine whether her

---

1. Plaintiff's personnel file apparently has disappeared, so the Court has no independent verification that plaintiff's job performance declined. Testimony was presented that Holifield took plaintiff's personnel file, and testimony was also presented that plaintiff removed her own file.

The Court makes no determination about who took what when. It notes simply that it has no way to independently verify the downturn in plaintiff's job performance, and that it credits Holifield's testimony regarding plaintiff's performance.

position supported a change in job classification to Grade 7.

In sum: in 1989, since Holifield was pleased with plaintiff's improvement in job performance, Holifield attempted to lay the groundwork for a promotion for plaintiff from a Clerical Assistant position to that of a Program Assistant by creating a new position. The Office of Personnel rebuffed Holifield's initial efforts several times, and, when a hiring freeze occurred and when plaintiff's job performance again declined, Holifield logically decided not to continue to attempt to create a Grade 7 position for plaintiff. This decision was apparently made sometime after plaintiff went on maternity leave, but was motivated by factors independent of her taking maternity leave. Plaintiff, for her part, did nothing to pursue a promotion through the means available to her—*i.e.,* requesting a desk audit of her position or taking steps to apply for an open, budgeted Grade 7 position within ADASA or elsewhere within the D.C. government.

In late November or early December 1989, plaintiff informed Holifield that she was pregnant. On May 2, 1990, plaintiff requested and received permission to take three months of maternity leave, commencing June 4, 1990, and concluding September 4, 1990. Plaintiff actually left ADASA on May 18, 1990, not June 4, after she began suffering dizziness, shortness of breath, and other medical problems associated with the pregnancy. Plaintiff's third child was born on June 30, 1990. Following the birth of the child, plaintiff suffered from a postpartum bladder infection and had a tubal ligation.

In early August 1990, plaintiff came in to the agency's offices to type up a document. She maintains that she spoke with Holifield on that occasion about an extension of her leave until October 1, rather than September 4, and that Holifield "indicated that she was in agreement." Holifield testified that plaintiff did not, officially or otherwise, "request" an extension, nor did Holifield "indicate[ ] her agreement." Rather, Holifield testified that as plaintiff was leaving the office after her August visit, plaintiff said, "I will see you on October 1st." Holifield told plaintiff that she had her dates wrong, that the agency was anxious to have her back at work, and that she would see plaintiff after Labor Day. Plaintiff never submitted a written request to Holifield for a further extension of her leave.

Plaintiff did not return to work on September 4, as previously agreed. On September 10, plaintiff called Holifield to "remind" her of their "agreement." Although plaintiff testified that Holifield said "okay" when plaintiff reminded her of their purportedly agreed-upon extension, Holifield testified that she told plaintiff that she had been absent for longer than she had leave to be absent, and that since she had made no formal written request for an extension of her leave, her current leave status was unapproved, and that she was absent without leave ("AWOL"). Holifield testified that she asked plaintiff why she needed more time—for example, if the baby was ill, if plaintiff was ill, or if plaintiff was having trouble finding child care—and that plaintiff responded in the negative to her queries.

On or about September 13, plaintiff again came in to the ADASA offices to deliver a doctor's note justifying her extended leave. Holifield was not in the office at the time; plaintiff left the note with a secretary. Since plaintiff had told Holifield that neither she nor the child was ill, Holifield understandably doubted the veracity of the doctor's note and took steps to verify the note by contacting plaintiff's physician. In addition, Holifield sent, via certified mail, a letter to plaintiff, requesting additional information to support her request for a further extension of leave. Plaintiff testified that she did not receive Holifield's letter until she returned to work in October. Plaintiff also testified, however, that she knew the Post Office was holding a piece of mail for her and chose not to sign for the letter.

The Court fully credits the testimony of Linda Holifield, finding it substantially more consistent and believable, and substantially less self-serving, than the conflicting testimony of plaintiff. While plaintiff testified that Holifield "indicated" her approval of plaintiff's unilateral extension of her leave, Holifield's testimony establishes that Holifield "indicated" nothing of the sort, and that plaintiff took none of the necessary steps to

formally request leave before (at the earliest) mid-September, and was singularly unhelpful in providing Holifield with further documentation supporting her continued absence. The Court therefore finds that Holifield was wholly justified in writing plaintiff up as AWOL for the month of September 1990.

Plaintiff testified that when she finally did return to the office on October 1, 1990, she found her office empty and her belongings in a box on the floor of a secretary's office. Holifield was not in the ADASA offices for the first week after plaintiff's tardy return; during that time, plaintiff was supervised by John Jackson, the ADASA Administrator. She apparently had little to do during that week. When Holifield returned to the ADASA offices on October 8, she assigned plaintiff to a new office and gave her new duties, including serving as a clerical assistant to the Pregnant and Post-partum Women's Program and providing other clerical support to the Staff of the Office of the ADASA Administrator. In addition, Holifield delegated day-to-day supervision of plaintiff to Paula Isaacs, so that Isaacs would, in Holifield's words, "serve as a buffer" between plaintiff and Holifield.

Soon after plaintiff's return to duty, she apparently asked Holifield about the promotion she had been "promised." Holifield told plaintiff that plaintiff had not been promoted.

Plaintiff did not take well to her non-promotion, nor did she take well to her new workstation and duties, nor did she establish any sort of cordial rapport with Isaacs. Instead, she performed her job at a minimally adequate level and, when her workload was particularly light, she testified that she played Yahtzee with her office mates rather than seek out new projects. In addition, Isaacs testified that plaintiff ignored or questioned every assignment Holifield (through Isaacs) gave her, failed to perform an adequate job on several assignments, and completely failed to follow through on one assignment in particular, involving an agency inventory matter.

On October 10, 1990, days after her return to the office, plaintiff submitted a "Notice of Intent to File a Grievance" to John Jackson, the Administrator of ADASA and Holifield's supervisor. Plaintiff filed a sex discrimination charge with the EEOC on December 27, 1990. The EEOC issued a determination on October 18, 1991, finding that no discrimination had occurred with respect to plaintiff's non-promotion. Plaintiff filed a second informal grievance with ADASA on October 1991, alleging that she was being "harassed" by unwarranted AWOL charges, discriminated against, and subjected to "mental hardship" because Linda Holifield had "created a very stressful work environment" for her. Pl.'s Ex. 28. A second EEOC charge, filed November 20, 1991, followed. The EEOC issued a determination finding no discrimination on February 21, 1992. This action was filed on January 22, 1992.

## Conclusions of Law

Based on the foregoing findings, the Court concludes that plaintiff has failed to prove by a preponderance of the evidence that defendant discriminated against her on the basis of her pregnancy when it failed to promote plaintiff to a DS–7 position. In addition, the Court concludes that, while plaintiff can establish a *prima facie* case of reprisal, defendant has put forward legitimate, nondiscriminatory reasons for its adverse treatment of plaintiff, and plaintiff has failed to rebut defendant's reasons.

### Failure To Promote

The Pregnancy Discrimination Act amended Title VII of the Civil Rights Act of 1964 to clarify that the prohibition of Title VII against sex discrimination included discrimination based on pregnancy. 42 U.S.C. § 2000e(k) (1994). To establish a *prima facie* case of discrimination based on pregnancy, a plaintiff must show that: (1) she was pregnant and/or subject to a pregnancy-related condition; (2) she was qualified for the position at issue; (3) she was affected by an adverse employment action; and (4) the employment action occurred "under circumstances that give rise to an inference of discrimination." *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668

(1973)). A failure to promote can be considered an adverse employment action. *See Palmer v. Shultz*, 815 F.2d 84, 109 (D.C.Cir. 1987).

 Assuming plaintiff can demonstrate a *prima facie* case of pregnancy discrimination, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for plaintiff's non-promotion. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant satisfies this burden of production, the burden of proof rests on plaintiff to prove that the employer's reason was merely a pretext for pregnancy discrimination. *Quaratino*, 71 F.3d at 64. Although the burden of production shifts at one point to the defendant if plaintiff establishes a *prima facie* case of pregnancy discrimination, "the plaintiff has the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against her because of her pregnancy." *Id.*

 While plaintiff has proven that she was indeed pregnant and on maternity leave during the time period at issue, that is the only factor of the four necessary to establish a *prima facie* case of discrimination that plaintiff has proven. Plaintiff has not put forward any evidence that she was qualified for a Grade 7 position, aside from her empty contention that Holifield would never have attempted to create a new Grade 7 position for plaintiff if plaintiff had not been qualified for it. This "negative proof" is insufficient. In addition, plaintiff has not even shown that she suffered an adverse employment action, since no position had been created into which plaintiff could have been promoted, and Holifield (and ADASA) had no power to create a Grade 7 position without approval from the Office of Personnel.

 Finally, plaintiff has not shown any circumstances that give rise to an inference of discrimination. The mere fact that Holifield's decision not to pursue plaintiff's promotion apparently occurred on or about the time plaintiff went on maternity leave is insufficient to establish an inference of discrimination, in the face of Holifield's wholly believable testimony that plaintiff's job performance again declined, and that a hiring freeze prevented even the Office of Personnel from making any progress toward creating a new Grade 7 position for which plaintiff could have applied.

 Even if plaintiff could somehow be seen to have established a *prima facie* case of discrimination stemming from defendant's failure to promote her upon her return from maternity leave, defendant has put forward not just one, but several, legitimate, non-discriminatory reasons for plaintiff's non-promotion. First, no career Grade 7 position was available within ADASA.[2] Second, plaintiff's job performance declined prior to her departure on maternity leave. Holifield testified that the informal agreement between Holifield and plaintiff was that Holifield would help plaintiff secure a Grade 7 promotion, to the extent she could, if plaintiff continued to show interest and improvement at work. Plaintiff did not hold up her end of the bargain, either before her maternity leave or upon her return. Holifield had no obligation to continue to pursue the extraordinary measure of creating a new position on plaintiff's behalf, once plaintiff had reneged on her side of their informal bargain. Third, the Court has found that Holifield was entirely justified in finding plaintiff was absent without leave for the entire month of September. If Holifield had not by then decided not to pursue a promotion for plaintiff, plain-

**2.** While Edwin Locust, the temporary employee who replaced plaintiff while she was on maternity leave, received a Grade 7 position several months after his arrival, the position was a limited non-career term appointment. Plaintiff testified at trial that because the Grade 7 position Locust filled was a term position, it was not one that plaintiff, a career employee, would have competed for. In addition, plaintiff apparently has complained at least once (in her December 27, 1990, EEOC charge) that Isaacs received a promotion to a Grade 9 Administrative Assistant position that plaintiff alleges she should have received. The Court notes that plaintiff left high school after completing one year, and that Isaacs has a masters' degree in business administration. There is no evidence whatsoever to support the notion that plaintiff was somehow more qualified than Isaacs for a promotion to a Grade 9 position, nor is there any evidence that plaintiff applied for that position in the first place.

tiff's sheer intransigence during August and September surely cemented that decision.

Plaintiff has put forward no credible evidence to show that the legitimate, non-discriminatory reasons articulated by defendant to explain why it failed to promote her are pretexts for pregnancy discrimination. There simply is no nexus between plaintiff's non-promotion and her pregnancy. The Court therefore holds that defendant did not discriminate against plaintiff on the basis of her pregnancy.

*Retaliation*

■ To establish a prima facie case of retaliation, a plaintiff must show:

(1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. As in a case of disparate treatment, this initial burden is not great. Plaintiff merely needs to establish facts adequate to permit an inference of retaliatory motive.... The causal connection of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.

*Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985) (quoting in part *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir. 1984)) (footnotes omitted). This Court has previously noted that establishing a *prima facie* case of retaliation is "not an onerous task." *Park v. Washington Metro. Area Transit Auth.,* 892 F.Supp. 5, 11 (D.D.C. 1995).

■ If plaintiff can establish a *prima facie* case of retaliation, as with the traditional order of proof in Title VII discrimination cases, the burden then switches to defendant to articulate a legitimate, nondiscriminatory reason for the alleged acts of reprisal. The plaintiff is then given the opportunity to prove that the reason articulated by the de-

fendant is a pretext for discrimination. *McKenna,* 729 F.2d at 790.

Plaintiff alleges that several memoranda and AWOL slips written up following her October 10, 1990, grievance and her December 27, 1990, EEOC charge were not written up for any legitimate disciplinary reason, but rather were written in retaliation for filing the grievance and EEOC charge. Plaintiff points to the flurry of memoranda following her October 1990 return to work as examples of defendant's unlawful retaliation. *See* Pl.'s Exs. 9, 10, 11, 13, 14, 17. Plaintiff also alleges that two 1991 informal reprimands and two 1991 AWOL charges were issued not because of any wrongdoing on plaintiff's part, but because defendant was retaliating against plaintiff for her 1990 grievance and EEOC charge. *See* Pl.'s Exs. 21, 23, 25, 27.

■ The number of documents which plaintiff claims support her retaliation claim is in no way indicative of the merit of that claim. Defendant has put forward legitimate, nondiscriminatory reasons for each of the purportedly adverse actions taken against plaintiff. First, as noted earlier, the Court has already found that Linda Holifield was entirely justified in finding plaintiff AWOL for the entire month of September. The actions that resulted from plaintiff's AWOL status (namely, the change in office space and job duties, and the placement of Isaacs in an intermediate supervisory position to serve as a "buffer" between Holifield and plaintiff) were equally justified, and plaintiff has put forward not one shred of credible evidence that these allegedly adverse actions were taken with unlawful retaliatory intent.[3]

Defendant has also put forward evidence and testimony that plaintiff repeatedly ignored or half-performed tasks given to her by Isaacs and Holifield, and that plaintiff's unresponsive attitude triggered several of the allegedly adverse memoranda from Holifield and Isaacs to plaintiff. Plaintiff does

---

**3.** The Court notes that the change in plaintiff's job duties and office space was not accompanied by a drop in pay or in employment grade. While no evidence was submitted directly on this point, the Court surmises that those actions (and termination as well) would in some cases be justified under the relevant employment regulations, in response to an intransigent employee's month-long unexcused absence from work. *See* Def.'s Ex. 17 (noting that 10 days or more of AWOL was "grounds for dismissal").

not contest this but to say, in effect, that she never should have been supervised by Isaacs in the first place. This contention does not serve to rebut defendant's legitimate reason for the alleged reprisal against plaintiff in the form of negative memoranda.

In addition, the June 10, 1991, informal reprimand of which plaintiff complains was entirely justified. Holifield's memorandum to plaintiff noted that, on a day on which plaintiff had received leave to be absent from work from 3:30 to 4:30, Holifield had seen plaintiff leave at 2:30. The July 1991 reprimand of which plaintiff complains was precipitated by an incident in which plaintiff was rude and belligerent toward Holifield when asked by her to complete an assignment in a timely fashion. (To the extent that the *de bene esse* testimony of Dr. Juan Lovelace conflicts with Holifield's representation of the incident, the Court finds Holifield's testimony on the issue more complete and believable.) Plaintiff's AWOL charges of September 16, 1991 and September 24, 1991, while apparently later rescinded, were wholly supported by the evidence, and in no way can be seen to constitute retaliation against plaintiff for her filing of an EEOC charge nearly a year earlier.[4]

Plaintiff also claimed in her testimony at trial that Holifield excluded her from meetings and gave her meaningless job duties, in retaliation for her having filed the charge of discrimination with the EEOC. She has shown no evidence of these things, and the Court therefore will disregard these unsupported allegations. Plaintiff has also alleged that Holifield instituted baseless disciplinary proceedings against her. While the disciplinary action Holifield pursued apparently did not result in the reprimanding or the dismissal of plaintiff, the Court finds that Holifield had ample grounds for pursuing the disciplinary action she sought, and plaintiff has put forward no evidence to rebut those grounds or to show that they were merely a pretext for retaliation. *See* Def.'s Ex. 17.

In sum, while plaintiff can (barely) establish a *prima facie* case of retaliation, defendant has in each instance articulated legitimate, non-discriminatory reasons for its adverse actions, and plaintiff has not provided the Court with any evidence even remotely establishing that defendant's reasons were false or a pretext for unlawful retaliation.

### Conclusion

This case is no more and no less than "a controversy underpinned by the subtleties of an inharmonious personal relationship." *Barnes v. Costle*, 561 F.2d 983, 992 (D.C.Cir. 1977) (citing the opinion of the district court in the same case). Plaintiff has wholly failed to establish that defendant's failure to promote her was due to her pregnancy. In addition, while plaintiff has established a *prima facie* case of reprisal, defendant has put forward convincing and unrebutted evidence that each adverse employment action was taken for legitimate, nondiscriminatory reasons. Accordingly, judgment is entered for defendant on plaintiff's Title VII claim. An appropriate Order accompanies this Opinion.

### ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that judgment is granted for defendant on Count I of plaintiff's complaint. This case therefore is concluded, Count I being the only count remaining in this action.

SO ORDERED.

---

4. On September 16, 1991, plaintiff apparently attempted to call in sick. She was advised by a staff member to call back in 15 minutes to secure leave from the appropriate supervisor; when she did, and the line was busy, she did not call again. This half-hearted attempt, while it apparently excused her AWOL status after the fact, is woefully insufficient, and Holifield's finding plaintiff AWOL was justified. On September 24, 1991, plaintiff apparently left an hour early without receiving clearance from Holifield, and without completing an assignment.