**Officer Linda COOKE–SEALS, Plaintiff,**

**v.**

**The DISTRICT OF COLUMBIA, et al., Defendants.**

**Civil Action No. 96–2778(JR).**

United States District Court, District of Columbia.

July 17, 1997.

Marc Gary, Thomas DiLenge, Mayer, Brown & Platt, Washington, DC, for Plaintiff.

Jo Anne Robinson, Nadine Chandler Wilburn, Asst. Corp. Counsel, Washington, DC, for Defendants.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff, a D.C. police officer, brings this action against the District of Columbia, the Metropolitan Police Department, and seven named MPD officers in their official and individual capacities. Count I alleges discrimination on the basis of plaintiff's association with her disabled son in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112. Count II raises a claim of unlawful retaliation under the ADA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). Counts III and IV present common law claims of intentional infliction of emotional distress and tortious interference with prospective employment. The individual defendants and the Metropolitan Police Department have moved to dismiss. For the reasons set forth below, the claim of tortious interference with prospective employment, stated only against defendants Blancato and

Peters, will go forward (together with all the claims stated against the District of Columbia). In all other respects, the motion to dismiss will be granted.

### Facts

For purposes of the motion to dismiss, these allegations of fact, set forth in the complaint, are taken to be true: Plaintiff has served as a police officer with Metropolitan Police Department since June 1990. During that time, she has had sole custody of her minor son, who suffers from severe allergies and asthma. In October 1991, plaintiff's son became severely ill and was hospitalized. Plaintiff's fellow officers and supervisors learned of her child's condition and began treating her differently from other officers. Because she had a disabled son, plaintiff was denied training and promotion opportunities, accommodations in shift schedules, and other employee benefits.

On September 16, 1992, plaintiff filed a complaint with the Equal Employment Opportunity Commission, charging violations of the ADA. She was then subjected to harassment in retaliation for her EEO activity. On September 30, 1994, the EEOC determined that the Department had unlawfully discriminated and retaliated against plaintiff. After the EEOC's ruling, plaintiff continued to be subjected to retaliation, including negative employment references in connection with her application for a position with the U.S. Customs Service. Plaintiff received her right to sue letter and commenced this action on December 16, 1996.

### Analysis

In their motion to dismiss, defendants submit that the individual officers may not be sued in their individual capacities under Title VII or the ADA; that the claims against the individual defendants in their official capacities must be dismissed as duplicative; that the Metropolitan Police Department is not a suable entity; and that the common law tort claims are subsumed under Title VII and ADA, or, in the alternative, barred by the statute of limitations and by absolute immunity.

Plaintiff concedes that the Metropolitan Police Department is an agency within the District of Columbia government and is thus not suable as a separate entity. *See Braxton v. National Capital Housing Authority*, 396 A.2d 215 (D.C.1978). Plaintiff also does not oppose dismissal of the Title VII claim against the officers in their individual capacities in Count II of the complaint. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995). The rest of defendants' arguments are opposed and require further discussion.

### 1. *Individual liability under the ADA*

■ Defendants argue that the Court of Appeals' holding in *Gary v. Long, supra*, that Title VII does not allow for individual capacity suits, should be extended to the ADA. One judge of this court has so held. *Amariglio v. National Railroad Passenger Corp.*, 941 F.Supp. 173, 178 (D.D.C.1996). Plaintiff responds that the plain language of the ADA, its sister relationship to the Rehabilitation Act, and the legal context in which the ADA was enacted all support the maintenance of ADA claims against supervisory employees in their individual capacities.

The ADA prohibits employers from discriminating, with respect to employment, against any qualified individual with a disability on the basis of that disability. An employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees ... and *any agent* of such person." 42 U.S.C. § 12111(5)(A) (emphasis added). The ADA's definition of employer is identical to that set forth in Title VII, 42 U.S.C. § 2000e(b), and in the Age Discrimination in Employment Act, 29 U.S.C. § 630(b).

*In Gary v. Long, supra*, 59 F.3d at 1399, the Court of Appeals rejected the argument, also put forward by plaintiff in this case, that the plain language meaning of "any agent" is that an individual employee may be held personally liable. *Id.* The Court held that the definition of "employer" permits only employers, and not individual employees, to be held liable under Title VII, and that the words "any agent" in the definition were

intended to "incorporate respondeat superior liability" into the statute. *Id.*

Plaintiff argues that interpretation of the ADA must follow the Rehabilitation Act, rather than Title VII, relying upon 42 U.S.C. § 12201(a) (unless otherwise stated, ADA not to be construed to apply lesser standard than Title V of Rehabilitation Act). No court has interpreted § 12201(a), nor the ADA in general, to require the application of the Rehabilitation Act's standard of individual liability to the ADA. In fact, several courts, relying upon 1992 amendments to the Rehabilitation Act which incorporated the standards applied under the ADA, *see* 29 U.S.C. § 794(d), have held the reverse: Whether individual liability exists under the Rehabilitation Act must be determined by looking to the ADA. *See Haltek v. Village of Park Forest*, 864 F.Supp. 802, 803 (N.D.Ill.1994); *Romand v. Zimmerman*, 881 F.Supp. 806, 812 (N.D.N.Y.1995). Accordingly, the court finds that cases construing the existence of individual liability under the Rehabilitation Act are not instructive in determining individual liability under the ADA.

Plaintiff submits, further, that Congress' intent to permit individual liability under the ADA can be discovered in the context in which the ADA was enacted. *See Morse v. Republican Party of Virginia*, —— U.S. ——, ——, 116 S.Ct. 1186, 1211, 134 L.Ed.2d 347 (1996) ("[E]valuation of congressional action must take into account its contemporary legal context") (citing *Cannon v. University of Chicago*, 441 U.S. 677, 698–99, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979)). The argument is not persuasive. It is certainly true that Congress enacted the ADA against a "backdrop" of decisions finding individual liability under Title VII, but the decisions interpreting Title VII liability were not consistent. *See Cannon*, 441 U.S. at 698, 99 S.Ct. at 1958.

The Court of Appeals' holding in *Gary v. Long, supra,* excluding individual liability from the definition of "employer" under Title VII, is applicable as well to the ADA's definition of "employer." Accordingly, plaintiff's ADA claim against the defendant officers in their individual capacities will be dismissed.

### 2. *Official capacity suits under ADA and Title VII*

■ Plaintiff has also sued the officers in their official capacities. A suit against an individual in her official capacity is one method of bringing suit against the employer and is distinct from an individual capacity suit. *See United States Equal Employment Opportunity Comm'n v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 n. 4 (7th Cir.1995); *see also Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) (suit against employee in official capacity operates as suit against employer). Where the suit has been filed against the employer (here the District of Columbia) *and* one or more employees, however, the claims against the employees *merge* with the claim against the employer. *Gary v. Long, supra,* 59 F.3d at 1399.

Because an official capacity suit against an individual is the functional equivalent of a suit against the employer, plaintiff's claims against the officers are redundant and an inefficient use of judicial resources. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (addressing official capacity suits under § 1983); *Lane v. Maryhaven Ctr. of Hope*, 944 F.Supp. 158 (E.D.N.Y.1996) (declining to allow official capacity suit as a "moral sanction"). Plaintiff's argument that maintenance of the claims is necessary to obtain discovery from the officers is accompanied by no showing that the individuals have been unavailable for discovery. The Title VII and ADA claims against the officers in their official capacities will be dismissed.

### 3. *Common law claims*

Defendants raise several challenges to plaintiff's tort claims of intentional infliction of emotional distress and intentional interference with prospective employment.

■ a. *Title VII and ADA as exclusive remedies.* Defendants argue that Title VII and ADA provide the exclusive remedies for plaintiff's claims arising from the same set of alleged facts. The precedent upon which they rely, however, applies only to federal employees. *See Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In the

context of nonfederal employment, it is clear that Title VII and ADA do not subsume common law state tort claims. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975); *Bouchet v. National Urban League, Inc.*, 730 F.2d 799, 804 (D.C.Cir. 1984) (Title VII); *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1277 (1st Cir.) (ADA), *cert. denied*, 508 U.S. 981, 113 S.Ct. 2987, 125 L.Ed.2d 682 (1993).

■ b. *Statute of limitations.* Defendants argue that plaintiff's claim of intentional infliction of emotional distress is time-barred. The applicable statute of limitations for plaintiff's claim is three years. *See Saunders v. Nemati*, 580 A.2d 660, 665 (D.C. 1990); D.C. Code § 12–301(8). Plaintiff's complaint was filed December 16, 1996.

■ Plaintiff contends that, because she has alleged a "continuous tort," her cause of action did not accrue until the tortious activity of all the defendants ceased, some time in March 1995, and well within the limitations period. *See Page v. United States*, 729 F.2d 818, 821 (D.C.Cir.1984). To satisfy the continuing tort doctrine, a complaint must allege (1) a continuous and repetitious wrong; (2) with damages flowing from the act as a whole, rather than from each individual act, and (3) at least one injurious act within the limitations period. *Whelan v. Abell*, 953 F.2d 663, 673 (D.C.Cir.1992), *cert. denied*, 506 U.S. 906, 113 S.Ct. 300, 121 L.Ed.2d 223 (1992). The complaint in this case alleges injurious conduct occurring after December 15, 1993, by all of the individual defendants except Sergeant Lancaster and Desk Sergeant Brown. The continuing tort doctrine cannot be invoked to bring untimely claims against Lancaster and Brown, and the common law claims against them will be dismissed.

■ As for the remaining defendants, the question of whether conduct that occurred *prior* to December 15, 1993, is actionable turns on whether plaintiff has adequately alleged a continuing violation. The tort of intentional infliction of emotional distress requires examination of a defendant's actions "as a whole and in context" with actions of other defendants. *See King v. Kidd*, 640

A.2d 656, 674 (D.C.1993); *see also Fredette v. Allied Van Lines, Inc.*, 66 F.3d 369, 375 (1st Cir.1995) (jury entitled to view conduct of defendants as a whole). Plaintiff alleges a series of retaliatory and harassing acts on the part of the individual defendants, beginning in 1992 and continuing through 1995. These allegations are sufficient to meet the continuing violation test, at least for purposes of a motion to dismiss. Whether plaintiff can actually prove that the alleged discriminatory actions are connected to one another and rise to the level of a continuing violation is not properly before the court at this time.

■ c. *Failure to state a claim of intentional infliction of emotional distress.* Defendant next argues that plaintiff has failed to state a claim of intentional infliction of emotional distress. The elements of the tort are (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another. *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 935 (D.C.1995), *amended* 681 A.2d 1097 (D.C. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997). Defendants' argument, which deals only with the first factor, is that the facts alleged in the complaint do not rise to the level of "extreme and outrageous conduct." To meet this standard, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.), *cert. denied*, 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982). This is a very demanding standard, infrequently met.

Plaintiff's allegations of a pattern of discrimination and abuse of supervisory power do not amount to allegations of "extreme and outrageous" conduct. *See Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 78–79 (D.D.C. 1996); *Green v. American Broadcasting Companies, Inc.*, 647 F.Supp. 1359, 1362 (D.D.C.1986). Viewed most favorably to plaintiff, the complaint alleges sporadic incidents of harassment by five individuals over a three-year period. The most serious allegations are that Ederheimer and O'Donnell

initiated an unmeritorious investigation and that Blancato and Peters gave negative and false employment references. While it is true that a defendant's conduct must be examined "as a whole and in the context of the other defendants," *see King, supra,* 640 A.2d at 674, plaintiff cannot build a claim of emotional distress against multiple defendants by aggregating allegations made as to individuals. Plaintiff's claim will be dismissed without prejudice.

d. *Absolute immunity.* Defendants argue, finally, that the claim of tortious interference with prospective employment brought against defendants Blancato and Peters is barred by absolute immunity.[1] A defendant has the burden of establishing absolute immunity. *See Moss v. Stockard,* 580 A.2d 1011, 1021 n. 18 (D.C.1990). He or she must show (1) that he or she "acted within the 'outer perimeter' of his or her official duties"; and (2) that the particular government function at issue was "discretionary" as opposed to ministerial. *See Moss, supra,* 580 A.2d at 1020. Plaintiff's challenge is to defendants' showing on the second element.

A "discretionary function" must allow significant application of choice. *See Moss,* 580 A.2d at 1020. Activity that is constrained by regulations or clearly established policy or standards is ministerial in nature. *Biscoe v. Arlington Co.,* 738 F.2d 1352, 1363 (D.C.Cir. 1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985). Although a *candid* evaluation of plaintiff's job performance may be the product of decision-making discretion, *see Ramey v. Bowsher,* 915 F.2d 731 (D.C.Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991), that discretion is limited by clearly established policies and orders. *See Biscoe, supra,* 738 F.2d at 1363. If, as plaintiff alleges, MPD had established policies prohibiting the disclosure of confidential information, or had, in fact, directed plaintiff's supervisors not to disclose such information, then plaintiff's supervisors were "required only to perform the ministerial function of carrying out that decision." *Durso v. Taylor,* 624 A.2d 449, 459 (D.C. 1993). Resolution of the question necessarily requires consideration of the factual circumstances surrounding the alleged conduct and cannot be accomplished on a motion to dismiss.

An appropriate order accompanies this memorandum.

### *ORDER*

Upon consideration of the motion to dismiss submitted by defendants Metropolitan Police Department and the individual officers, plaintiff's opposition, and the entire record, for the reasons stated in an accompanying memorandum, it is this 17th day of July, 1997,

**ORDERED** that defendants' motion [# 15] is *granted in part and denied in part.* Plaintiff's complaint shall be dismissed as to defendant Metropolitan Police Department. Counts I and II are dismissed as to the individual officers, in both their official and individual capacities. Count IV is dismissed as to the individual officers.

---

1. Defendants assert in a footnote that the individual defendants would also be immune from suit on the claim of intentional infliction of emotional distress. The court need not reach that issue.