Barbara KUNDRAT, Plaintiff,

v.

The DISTRICT OF COLUMBIA,
Defendant.

No. Civ.A. 99–2085 RMU.

United States District Court,
District of Columbia.

May 24, 2000.

**2**

James McPherson, McPherson & Schillesci, New Orleans, Louisiana, Woodley B. Osborne, Osborne & Deutsch, Washington, D.C., for the plaintiff, Barbara M. Kundrat.

Stratton C. Strand, Leon Swenson, Assistant Corporation Counsel, General Litigation Division, Corporation Counsel of D.C., Washington, D.C., for the defendants, the District of Columbia, the Superior Court of the District of Columbia and the Joint Committee on Judicial Administration of the District of Columbia Courts.

### *MEMORANDUM OPINION*

**Granting Unopposed Motion for Leave to Amend Complaint; Granting the Superior Court Defendants' Motion to Dismiss**

URBINA, District Judge.

## I. INTRODUCTION

This Title VII discrimination and retaliation case comes before the court upon the plaintiff's unopposed motion for leave to amend the complaint and the two original defendants' motion to dismiss. The two parties named as defendants in the original complaint, the Superior Court of the District of Columbia and the Joint Committee on Judicial Administration (collectively "the Superior Court" or "the Superior Court defendants"), filed a joint motion to dismiss on the ground that they are *non sui juris* (not suable entities). The plaintiff filed an opposition to the motion to dismiss, but the defendants did not file a reply. The plaintiff also filed a motion for leave to amend the complaint to add the District of Columbia as a defendant. The Superior Court defendants filed their written consent to the proposed amendment.

For the reasons set forth below, the court will grant the plaintiff leave to amend her complaint and will grant the Superior Court defendants' motion to dismiss.

## II. BACKGROUND

The plaintiff, Barbara M. Kundrat, is a white woman who was employed as Deputy Clerk of the D.C. Superior Court from January 1993 until her resignation in August 1998. *See* Am.Compl. ¶¶ 9, 21. Ms. Kundrat has a law degree and a Master's degree in management from Northwestern University's Kellogg School of Management. *Id.* ¶ 10. When Ms. Kundrat began her tenure as Deputy Clerk, she supervised nearly 600 Superior Court employees. *Id.* ¶ 11. As Deputy Clerk, she was first supervised by and reported to the Clerk of the Superior Court ("the Clerk"), Fred Beane.[1] *Id.*

At some unspecified time in 1994, Mr. Beane was succeeded as Clerk by Duane Delaney, an African–American man. Ms. Kundrat alleges that once Mr. Delaney assumed the Clerk's position, he discriminated against her by taking away portions of her duties, excluding her from meetings

---

1. Reviewing both the complaint and the amended complaint, it appears that Ms. Kundrat does not allege any wrongdoing by Mr. Beane.

she had previously attended, removing support staff from her supervision, forbidding her from using support staff in the performance of her duties and denying her training opportunities. *See* Am.Compl. ¶¶ 12, 15. Beginning in 1996, Ms. Kundrat alleges, Mr. Delaney began to "reclassify" the position of her subordinates and award them pay increases without affording her any input. *Id.* ¶ 13. Specifically, in October 1996, Mr. Delaney hired an African–American man, Louis Kelly, as Operations Management Specialist and reassigned "the majority" of her job duties to him. *Id.* ¶ 14.

In 1997, Ms. Kundrat filed an internal equal employment opportunity grievance complaining of racially discriminatory treatment by Mr. Delaney and sexual harassment by other employees.[2] *See* Am. Compl. ¶ 16. She alleges that when Mr. Delaney found out about her internal grievance, he stopped speaking to her and retaliated by requiring her to submit a daily time log which was not required of other employees. *Id.* ¶ 17.

In January 1998, Ms. Kundrat filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). *See* Am.Compl. ¶ 18. The following month, she followed up with a memorandum to the Superior Court's EEO officer and Personnel Director which described the alleged hostile environment and sexual harassment. *Id.* ¶ 19. Ms. Kundrat alleges that in retaliation for her grievances, Mr. Delaney deprived her of all non-clerical duties, as well as the authority to act in his absence, which he delegated to other employees who had been her subordinates. *See* Am. Compl. ¶ 20.

Finally, on August 4, 1998, Mr. Delaney issued a notice of proposed suspension to Ms. Kundrat. *Id.* ¶ 20. Ms. Kundrat was so distraught by the suspension notice that she left the building immediately and resigned her position as Deputy Clerk the following day, August 5, 1998. *Id.* ¶ 21. She essentially characterizes her resignation as a constructive discharge which became necessary because Mr. Delaney had made her "work situation so intolerable that she could not continue in her position without injury to her mental health." *Id.* ¶ 21.

On April 30, 1999, the EEOC sent Ms. Kundrat a "Dismissal and Notice of Rights" which informed her that it was "unable to conclude that the information obtained establishes violations of the statutes" and that she had the right to bring suit in federal or state court within 90 days of receiving the Notice. On August 4, 1999, Ms. Kundrat filed a three-count *pro se*[3] complaint in this court, alleging gender discrimination, racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). She seeks reinstatement to the position of Deputy Clerk of the Superior Court, backpay and benefits, compensatory damages for emotional distress and loss of personal and professional reputation ("esteem"), and attorneys' fees and costs. *See* Am.Compl., Prayer for Relief ¶¶ 2–5. On September 10, 1999 the Superior Court and Joint Committee filed an answer.

## III. DISCUSSION

### A. The Plaintiff's Unopposed Motion for Leave to Amend the Complaint

██ Ms. Kundrat filed a motion for leave to amend her complaint, and the Superior Court defendants submitted a letter dated May 19, 2000 which consents to

---

2. It does not appear that Ms. Kundrat alleges sexual harassment by Mr. Delaney himself.

3. Ms. Kundrat was unrepresented when she initiated this action. At the initial status hearing held on March 2, 2000, James McPherson, Esq., of New Orleans, was admitted *pro hac vice* and entered his appearance as plaintiff's counsel. Woodley Osborne, Esq., subsequently entered his appearance as local counsel.

the proposed amendment. Accordingly, finding that the Superior Court defendants consent to the proposed amendment and that they will not be prejudiced thereby,[4] the court will grant the plaintiff leave to amend her complaint. *See* Fed.R.Civ.P. 15(a) (once the defendant has filed a responsive pleading, a party may amend its pleading "only by leave of court or by written consent of the adverse party"). A major consequence of the amendment is that the District of Columbia is now a party defendant.[5]

## B. Motion to Dismiss Superior Court Defendants as *Non Sui Juris*

### 1. *Legal Standard for Motion to Dismiss*

 The Superior Court defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. A motion to dismiss for lack of personal jurisdiction tests not whether the plaintiff will prevail on the merits but instead whether or not the court may properly exercise jurisdiction over the movants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Maljack Prods. v. Motion Picture Ass'n,* 52 F.3d 373, 375 (D.C.Cir. 1995). The court need not, however, accept as true the plaintiff's legal conclu-

sions. *See Taylor v. F.D.I.C.,* 132 F.3d 753, 762 (D.C.Cir.1997). In applying the foregoing standard for motions to dismiss, however, the court recognizes that because Title VII is a remedial statute which is generally broadly construed, this matter "should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiff(s) are entitled to no relief under any state of the facts, which could be proved in support of their claims." *See Escalera v. New York City Hsg. Auth.,* 425 F.2d 853, 857 (2d Cir.), *cert. den.,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

### 2. *Can the Superior Court Defendants be Sued in Their Own Names?*

Like the plaintiff and the defendants, the court finds only two decisions in this Circuit which discuss the precise question at issue on this motion, namely, whether the Superior Court or its Joint Committee on Judicial Administration may be sued *eo nomine* (in their own names). In *Thompson v. District of Columbia,* 1980 WL 123 (D.D.C.1980), the late Judge Gasch held that neither the D.C. Superior Court nor its Joint Committee on Administration is an entity suable in its own name. Eleven years later, in *Galloway v. The D.C. Courts,* 1991 WL 229949 (D.D.C.1991), this court suggested there might be merit in the opposite view, but only in dictum. It appears that the U.S. Court of Appeals for the D.C. Circuit ("the D.C. Circuit") has not addressed this exact issue.[6]

---

4. *Cf. Williams v. Office of Financial Management,* 1993 WL 87967, *3 (D.C.Cir.1993) (district court property dismissing D.C. agency as *non sui juris,* but court should have permitted *pro se* plaintiff to amend complaint to name D.C. government as defendant: "We stress that the District does not plead prejudice from Williams' technical pleading error. *** [T]he District's lawyers knew all along that Williams meant to sue her municipal employer, but had unwittingly called that employer by the wrong name.").

5. The amended complaint does not name Mr. Delaney or other Superior Court employees as defendants. "It is well settled," however, "that if the plaintiff [had sued] the defendants

in their official capacities, the suit [would] be treated as a suit against the District of Columbia" anyway. *See Arnold v. Moore,* 980 F.Supp. 28, 36 (D.D.C.1997) (citing *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

6. In an unpublished opinion, the D.C. Circuit affirmed the decision in which Judge Gasch held that the Superior Court and the Joint Committee are not suable entities. The Order of Affirmance is published in the Federal Reporter 2d, but the accompanying opinion is not available either in the Reporter or on-line on WestLaw. *See Thompson v. D.C.,* 672 F.2d 897 (D.C.Cir. Dec.2, 1981). Unfortunately, the Circuit's opinion was issued prior to the

■ There is ample authority in this Circuit, however, for the general proposition that if a department or agency of a municipality is not a corporate body, it cannot be sued as such. 3 McQuillin *Municipal Corporations* § 12.40, at 242 (rev.3d ed.1990). Both this court and the local courts of the District of Columbia have consistently applied this rule to dismiss claims against governmental agencies or departments of the District of Columbia. *See Trifax Corp. v. D.C.*, 53 F.Supp.2d 20, 26 (D.D.C.1999) (Kessler, J.) (Office of Inspector General, Dep't. of Health, Dep't. of Administrative Services and DHS); *Gales v. D.C.*, 47 F.Supp.2d 43, 48 (D.D.C.1999) (Robertson, J.); *Arnold v. Moore*, 980 F.Supp. 28, 33 (D.D.C.1997) (Lamberth, J.) (dismissing claims against D.C. Department of Corrections); *Cooke–Seals v. D.C.*, 973 F.Supp. 184, 186 (D.D.C. 1997) (Robertson, J.) (MPD); *Milliner v. D.C.*, 932 F.Supp. 345, 347 (D.D.C.1996) (Harris, J.) (DHS's Alcohol and Drug Abuse Services Admin.); *Jenkins v. Government of D.C.*, 1996 WL 440551, *1 n. 2 (D.D.C.) (Dep't of Corrections Medical Unit), *appeal dis. as moot*, 1996 WL 761945 (D.C.Cir.1996); *Aleotti v. Baars*, 896 F.Supp. 1, 6 (D.D.C.1995) (Friedman, J.) (D.C. Metropolitan Police Department), *aff'd summarily*, 107 F.3d 922, 1996 WL 680175 (D.C.Cir.1996) (table, text in West-Law); *Bennett v. D.C. Dep't. of Corrections*, 1995 WL 601049, *1 (D.D.C.1995) (Friedman, J.); *Ali v. Barry*, 1995 WL 350788, *1 (D.D.C.1995) (Friedman, J.) (Psychiatric Services facility); *Zervas v.*

*D.C.*, 817 F.Supp. 148, 150 (D.D.C.1993) (Harris, J.) (Fire Dep't. and Office of Personnel); *Fields v. D.C. Dep't. of Corrections*, 789 F.Supp. 20, 22 (D.D.C.1992); *Gallion v. D.C. DHS*, 1992 WL 44360, *1 (D.D.C.1992) (Harris, J.); *Byrd v. D.C.*, 1991 WL 336038, *3 (D.D.C.1991) (Hon. Joyce Green, J.) (Department of Corrections); *Gainza v. D.C. Dep't. of Corrections*, 1991 WL 166580, *2 (D.D.C.1991) (Sporkin, J.); *Owens v. Government of D.C. Dep't of Hsg. and Community Dev.*, 1988 WL 113813, *1 (D.D.C.1988); *Kerkam v. D.C. Bd. of Ed.*, 672 F.Supp. 519, 520 (D.D.C.1987) (Penn, J.), *rev'd o.g.*, 862 F.2d 884 (D.C.Cir.1988); *Crew v. Barry*, 1979 WL 33, *2 (D.D.C.1979) (Parker, J.) (Office of Human Rights and Commission on Human Rights); *Ray v. D.C.*, 535 A.2d 868, 870 n. 2 (D.C.1987) (Fire Dep't., Board of Police & Fire Surgeons and Police & Fire Clinic); *Turner v. D.C.*, 532 A.2d 662, 675 (D.C.1987); *Braxton v. National Capital Hsg. Auth.*, 396 A.2d 215, 216–17 (D.C.1978); *Miller v. Spencer*, 330 A.2d 250, 251 n. 2 (D.C.1974) (Department of Sanitation).[7] This court has applied the *non sui juris* rule specifically in the Title VII context: "In a Title VII suit against the District of Columbia, only the District of Columbia, and not its departments or agencies, may be the proper defendant." *Raney v. D.C.*, 892 F.Supp. 283, 289 (D.D.C.1995).

■ Moreover, in the only instance where this court based its decision on the

institution of computer automation. Consequently, attempts to obtain a copy of the opinion directly from the Circuit Court have been unavailing despite the best efforts of that court's able staff.

Thus, this court cannot ascertain whether the Circuit affirmed Judge Gasch's holding on the *non sui juris* issue. It is possible that the appellant did not raise that issue on appeal. Accordingly, this court proceeds on the premise that the Circuit has not ruled on whether the Superior Court and Joint Committee are suable entities. *Cf. Associated Dry Goods Corp. v. EEOC*, 419 F.Supp. 814, 819 n. 8 (E.D.Va.1976) (because it was unclear whether the Fourth Circuit's summary affirmance

was granted on the issue at bar, "the summary affirmance cannot be given weight on the question herein involved.").

**7.** *Accord Gray v. Department of the Treasury, Internal Revenue Depart.*, 1987 WL 59592, *1 (D.S.C.1987) (IRS and Treasury dismissed as *non sui juris* because "Congress has not specifically declared [them] to be suable") (citing *Blackmar*); *Jones v. FBI*, 139 F.Supp. 38, 41 (D.Md.1956) (if plaintiff's claim were considered to be claim against FBI instead of the United States, "it would have to be dismissed" because Congress had not authorized FBI to sue and be sued).

specific question whether the Superior Court is suable in its own name, this court answered that question in the negative and dismissed the complaint as to the Superior Court. *See Thompson v. District of Columbia*, 1980 WL 123 (D.D.C.1980). In *Thompson*, Judge Gasch followed the U.S. Supreme Court's decision in *Blackmar v. Guerre*, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952), which held that the Civil Service Commission was not a suable entity. The Supreme Court reasoned,

> When Congress authorized one of its agencies to be sued *eo nomine*, it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity.[8] Since the Civil Service Commission is not a corporate entity which Congress has authorized to be sued,[9] a suit involving the action of the Commission generally must be brought against the individual commissioners as members of the United States Civil Service Commission.

*Blackmar*, 342 U.S. at 515, 72 S.Ct. 410. Judge Gasch noted that the D.C. Court of

Appeals had already applied the Supreme Court's reasoning to bar suit against D.C. agencies which were established by Congress (like the Superior Court). *See Thompson*, 1980 WL 123 at *2 (citing *Braxton v. National Capital Hsg. Auth.*, 396 A.2d 215, 217–18 (D.C.1978) (National Capital Housing Authority, an entity created by Congress, is *non sui juris* )). With that in mind, Judge Gasch considered whether Congress had rendered the Superior Court *sui juris*. The Judge correctly found that the legislation which vested the judicial power of the District of Columbia in the Superior Court and Court of Appeals did not authorize those courts to be sued either expressly or by implication. *See Thompson*, 1980 WL 123 at *2 (citing D.C.Code § 11—app. 431 (Supp.V, 1978)). Therefore, the Judge concluded that the Superior Court is not a suable entity.

Conversely, this court has never held that the Superior Court and the Joint Committee are suable entities, nor has it allowed a party to prosecute claims against those entities in their own names. The

---

**8.** The court notes the Supreme Court's precise choice of words on this score. The Supreme Court did *not* say that Congress may impliedly authorize an entity to be sued *"such as"* or *"for example"* when the agency is the offspring of a suable entity. Such language would indicate that being the offspring of a suable entity is just one way to be impliedly suable. Rather, the Supreme Court wrote that an entity may be impliedly suable *"because* the agency is the offspring of such a suable entity." *See Blackmar*, 342 U.S. at 515, 72 S.Ct. 410. Thus, *Blackmar* recognizes only one way for a Congressionally created entity to be impliedly suable—being the offspring of an entity which is suable.

The plaintiff has not contended that the Superior Court or its Joint Committee is the "offspring" of any suable entity, nor does the court find any basis for such a contention. (*Cf. Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U.S. 381, 392–94, 59 S.Ct. 516, 83 L.Ed. 784 (1939) (where Congress explicitly authorized Reconstruction Finance Corp. to sue and be sued and also empowered it to create regional subsidiaries, the parent's susceptibility to suit "flow[ed] automatically to the Regionals from the source of their being.")).

**9.** The court again notes the Supreme Court's precise choice of words on this score. The Supreme Court did *not* say that the Civil Service Commission is not suable *eo nomine* simply because it is not a corporate entity. If the Court had used such language, that might mean that a Congressionally created entity is suable so long as it is a constituted as a corporate entity. Rather, the Supreme Court wrote that the Commission is not suable because it is "not a corporate entity *which Congress has authorized to be sued.*" *See Blackmar*, 342 U.S. at 515, 72 S.Ct. 410 (emphasis added). This means that a Congressionally created entity is not suable *eo nomine* unless Congress has constituted it as a corporate entity *and*, in addition, authorized it to sue and be sued.

The contrary construction is untenable because it would render superfluous the qualifier "which Congress has authorized to be sued." *See* Sands, *Sutherland on Statutory Construction*, § 46.06 at 104 (4th ed.1984 with 1991 Supp.) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, . . . ."), *cited in Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 587 (D.C.Cir.1993).

only opinion of this court to suggest that the Superior Court *might* be a suable entity did so only in dictum. *See Galloway v. The D.C. Courts,* 1991 WL 229949, *2 to *3 (D.D.C.1991). In *Galloway* this court acknowledged that "[a]n entity formed by Congress may not be sued unless the legislature, either explicitly or implicitly, authorizes such suit." *Id.* at *2 (citing *Braxton,* 396 A.2d at 216–17). *Galloway* cited a treatise, however, which states that "when an entity 'performs functions peculiar to such bodies which are performed separately from the functions of the municipality, these bodies are responsible as corporations and may sue or be sued as such.'" *Galloway,* 1991 WL 229949 at *2 (quoting 3 McQuillin, *Municipal Corporations,* § 12.40 (rev.3d ed.1990)).[10] Applying this standard, *Galloway* opined, "it appears that the Superior Court of the District of Columbia is *sui juris*" because that court "performs functions separate from those of the municipality," such as resolving disputes, issuing warrants and holding persons in contempt. *See Galloway,* 1991 WL 229949 at *3. Significantly, however, the *Galloway* court took the same action it would have taken had it held that the Superior Court is *non sui juris:* it granted the Superior Court's motion to dismiss the claims against it for lack of jurisdiction. The court explained,

> Because plaintiff appears to have a cause of action against the Superior Court of the District of Columbia and the District of Columbia, and *because plaintiff can obtain any relief to which he is entitled under the law from* either the Superior Court or *the District of Columbia, it is not necessary to further complicate this litigation by allowing the case to continue against other ... organizations that may be non sui juris.... Accordingly, the District of Co-*

*lumbia Courts ... shall be dismissed* as party defendants.

*Galloway,* 1991 WL 229949 at *3 (emphasis added). Likewise, in the instant case it appears that Ms. Kundrat's cause of action lies against the District of Columbia,[11] and she can proceed against the District directly without naming the Superior Court and Joint Committee as defendants.

■ In any event, the court does not discern any compelling basis for departing from the overwhelming weight of precedent in this Circuit which holds that "[i]n the absence of *explicit* statutory authorization, bodies within the District of Columbia government are not suable as separate entities." *Milliner v. D.C.,* 1993 WL 837384, *1 (D.D.C.1993) (citing *Hinton v. Metropolitan Police Department,* 726 F.Supp. 875 (D.D.C.1989) (emphasis added) (Revercomb, J.)). The plaintiff has not pointed to any statute which explicitly provides that the D.C. Superior Court or its Joint Committee on Judicial Administration can be sued *eo nomine.*

Congress created the Joint Committee on Judicial Administration in the D.C. Self–Government Reorganization Act of 1973, Pub.L. No. 93–198, 87 Stat. 792. That act specifically defines the purpose, powers and legal status of the Joint Committee, but it contains no language authorizing the Joint Committee to sue or be sued in its own name. When Congress wished to authorize a federally created entity to sue and be sued in its own name, it knows how to do so and does so explicitly. *Cf.* former 12 U.S.C. § 1725(c)(4) (repealed 1989) (Congress authorized Federal Savings and Loan Insurance Corp. "[t]o sue and be sued, complain and defend, in any court of competent jurisdiction"); 12 U.S.C. § 1819(a) (Federal Deposit Insurance Corp. "shall have power ... [t]o sue

---

**10.** The court notes that McQuillin does not cite any decisions from courts within this Circuit or the Fourth Circuit, whether state or federal, in support of this proposition. *See* 3 McQuillin, *Municipal Corporations,* § 12.40 (rev.3d ed.1990).

**11.** At this juncture, of course, the court expresses no opinion on the merits of Ms. Kundrat's claims and allegations against the District.

**8**

and be sued, and complain and defend, in any court of law or equity, State or Federal"); D.C.Code § 32–262.5(b) (PBC subject to suit); D.C.Code § 31–1511 (explicitly providing that Board of Trustees of U.D.C. is "a body corporate" which may "sue or be sued" and may "complain or defend in its own name in any court of competent jurisdiction"); D.C.Code § 5–803(b) (explicitly providing that D.C. Redevelopment Agency has power to sue and be sued). In light of the Supreme Court's clear statement that "an agency established by Congress may not be sued *eo nomine* unless Congress has authorized the entity to be sued by explicit language or by implication," *see Blackmar*, 342 U.S. at 514–15, 72 S.Ct. 410, this court declines to waive or bypass the requirement of Congressional authorization.

Accordingly, the court joins *Thompson v. D.C.* in concluding that neither the D.C. Superior Court nor the Joint Committee is suable *eo nomine*. *See Marin v. Committee on Admissions*, 1998 WL 1181013, *2 n. 1 (D.D.C.1998) (agreeing with defendants' contention that the D.C. Court of Appeals' Committee on Admissions is *non sui juris* ) (dictum), *recon. den.*, 1999 WL 1273458 (D.D.C.), *aff'd o.g.*, 1999 WL 1215950 (D.C.Cir.1999).[12] Consequently, the court will dismiss the complaint as to the Superior Court defendants. Due to the amendment of the complaint, however, the District of Columbia remains as a party defendant.[13]

### IV. CONCLUSION

For the foregoing reasons, the court will grant the plaintiff leave to amend her complaint and will grant the Superior Court defendants' motion to dismiss the complaint on the ground that they are *non sui juris*. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed this 24 day of May, 2000.

---

**12.** In *Marin* this court noted the defendants' contention that as D.C. agencies, they were not suable in their own names. Immediately after noting this contention, the court characterized as a "deficiency" the plaintiff's failure to name the District of Columbia itself as a defendant instead of the D.C. agencies. The only reason the *Marin* court did not dismiss the D.C. agencies as *non sui juris* is because the court dismissed the complaint on other grounds (the plaintiff's lack of standing).

**13.** If the evidence clearly showed that Ms. Kundrat could not recover against the District of Columbia, the court might properly deny leave to amend the complaint to add the Dis-

trict as a defendant. *See Davidson v. Kane*, 337 F.Supp. 922, 923 (E.D.Va.1972) ("The Court could allow amendment of the complaint to substitute the United States as a party defendant instead of the [*non sui juris* ] federal agencies; however, since the complaint alleges negligence on the part of the federal defendants", a claim which was clearly barred by the Federal Tort Claims Act, the court denied leave to amend). Here, however, the current record does not provide a basis for the court to conclude that Ms. Kundrat's claims against the District will be barred, so the court cannot say that the amendment is futile.