# District of Columbia
# Court of Appeals

**No. 14-CF-1170**

GEORGE L. SYDNOR,



Appellant,

v.

**CF2-18528-13**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE:  Fisher and Easterly, Associate Judges; and Pryor, Senior Judge.

## J U D G M E N T

This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel.  On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the matter on appeal is remanded with instructions to vacate the convictions for burglary and receiving stolen property and to enter judgment for the offense of unlawful entry.  Appellant's conviction for second-degree theft, which was not challenged on appeal, remains intact.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated:  January 14, 2016.

Opinion by Associate Judge John Fisher.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-1170

FILED 1/14/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

GEORGE L. SYDNOR, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-18528-13)

(Hon. John McCabe, Trial Judge)

(Argued November 5, 2015                    Decided January 14, 2016)

*Daniel S. Harawa*, Public Defender Service, with whom *James Klein*, Public Defender Service, was on the brief, for appellant.

*Peter S. Smith*, Assistant United States Attorney, with whom *Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Jeffrey S. Nestler*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and EASTERLY, *Associate Judges*, and PRYOR, *Senior Judge*.

FISHER, *Associate Judge*: On October 14, 2014, a jury convicted appellant George Sydnor of second-degree burglary, second-degree theft, and receiving stolen property ("RSP"). The evidence showed that appellant entered a fenced construction site used by Nicholson Construction Company and removed six steel

pipes.   Appellant contends that the construction site was not a "yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade" and thus was not a place that could be burglarized under D.C. Code § 22-801 (b) (2012 Repl.).[1]

## I.  Background

In 2013 Nicholson Construction Company ("Nicholson") was hired by Potomac Construction, a general contractor for the Washington Metropolitan Area Transit Authority ("Metro"), to prevent water and sand from leaking into the Metro tunnel system near the intersection of East Capitol Street and Southern Avenue, S.E.  To do so, Nicholson drilled holes in the ground near the tunnel and filled the holes with grout.  Nicholson stored new drill casings (hollow steel pipes) within

---

[1] Appellant does not challenge his convictions for theft and RSP.  However, the government concedes that appellant's RSP conviction should be vacated.  *See Cannon v. United States*, 838 A.2d 293, 299-300 (D.C. 2004) ("As a matter of both law and logic, appellant 'cannot be convicted of both theft and receipt of stolen goods with respect to the same property.'") (quoting *Roberts v. United States*, 508 A.2d 110, 113 (D.C. 1986)); *Byrd v. United States*, 598 A.2d 386, 392 (D.C. 1991) (en banc).  The government does not argue that both convictions should stand because the sentences are concurrent.  *See* D.C. Code § 22-3203 ("A person may be convicted of . . . theft *and* receiving stolen property for the same act or course of conduct; provided, that no person shall be *consecutively* sentenced for any such combination . . . .") (emphasis added).  We therefore remand the case to the trial court with instructions to vacate appellant's conviction for receipt of stolen property ("RSP").

locked storage containers on the site and placed used casings on top of and next to the containers. An eight-foot-tall chain-link fence posted with "no trespassing" signs and secured by two locked gates surrounded the construction site.

On October 21, 2013, around 3:00 a.m., Metropolitan Police Department Officer Gary Gulich noticed appellant loading a large metal pipe into the back of a pickup truck parked near the site. Following appellant as he drove away, Office Gulich noticed more steel pipes in the back of appellant's truck. Believing the pipes came from the construction site, Officer Gulich conducted a traffic stop. Upon being questioned by Officer Gulich, appellant admitted that he did not work at the construction site and was not authorized to be there – facts which Amy Duhon, a project manager for Potomac Construction, later verified at trial. Finding the situation "a little strange," Officer Gulich then called for backup.

When Officer Patrick Hogan arrived, he entered the construction site to investigate by squeezing between the fence and the bent edge of the locked gate. Inside, Officer Hogan saw drill casings that looked similar to the six pipes found in appellant's pickup truck. He also found Nike sneaker prints on the ground inside the construction area which matched the patterns on appellant's sneakers, and he

noticed drag marks leading from the crate of used casings toward where appellant had been parked. Based on this information, the officers arrested appellant.

The burglary statute states, in relevant part: "whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, . . . any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree." D.C. Code § 22-801 (b) (2012 Repl.). At trial, the defense moved for a judgment of acquittal, contending that the construction materials were not deposited and kept at the construction site "for the purpose of trade" because they were not for sale.

The trial judge denied the motion, concluding that the phrase "goods . . . kept for the purpose of trade" was not limited to items "waiting to be sold to someone else" and included construction materials stored on site for purposes of completing the repair job. The motion was renewed and denied at the close of evidence. The trial court did, however, grant the defense request to instruct the jury on unlawful entry as a lesser-included offense of burglary. Following the trial

court's instructions, the jury did not consider the lesser-included offense of unlawful entry after finding the defendant guilty of the burglary charge.

## II. Burglary

Whether the burglary statute applies to the Nicholson construction site is a question of statutory interpretation which we review *de novo*. *See Wynn v. United States*, 48 A.3d 181, 188 (D.C. 2012). "'Statutory interpretation is a holistic endeavor, and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter.'" *Baltimore v. District of Columbia*, 10 A.3d 1141, 1146 (D.C. 2011) (quoting *Cook v. Edgewood Mgmt. Corp.*, 825 A.2d 939, 946 (D.C. 2003)).

At common law, the offense of burglary was defined as "the breaking and entering of a dwelling at night with the intent to commit a felony." *Swinson v. United States*, 483 A.2d 1160, 1162 (D.C. 1984). Finding the common law definition too narrow, *see* 13 Cong. Rec. 5625 (1882), Congress enacted a "housebreaking" law in 1882 which extended well beyond houses and other dwellings. *See* An Act to more effectually punish house-breaking in the District of Columbia, and for other purposes, ch. 289, 22 Stat. 162 (1882). In the 1901

codification of the Act, Congress defined the offense to include entry "either in the night or daytime" of "any dwelling, bank, store, warehouse, shop, stable, or other building, or any apartment or room, . . . or any steamboat, canal boat, vessel, or other water craft, or railroad car, *or any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade*, with the intent to . . . commit any criminal offense."  31 Stat. 1323, 1324, ch. 854, § 823 (1901) (emphasis added).

The District of Columbia now refers to this offense as "burglary."  Though amended several times, the statute still uses broad language to describe the types of buildings and structures that fall under its protection.  *See* D.C. Code § 22-801; *see also Swinson*, 483 A.2d at 1163 (holding that underground Metro stations are "building[s]" that can be burglarized).  However, the government does not contend that this case involves a protected building or structure, and so the pertinent question is whether the Nicholson construction site constitutes the type of "yard" covered by the statute.

Despite the expansive approach taken by the legislature with respect to buildings, the statute specifies that only certain yards are covered – those "where any lumber, coal, or other goods or chattels are deposited and kept for the purpose

of trade." The parties have not identified, and we have not found, any legislative history that explains congressional intent. However, one key phrase, "for the purpose of trade[,]" is particularly helpful in determining what types of yards Congress meant to protect.

"[F]or the purpose of trade" most naturally describes items that will eventually be bought, sold, bartered, or exchanged in a commercial transaction. Because the word "trade" can also refer to the business or occupation by which a person earns wages or profit, it is tempting to construe "for the purpose of trade" to mean "for use in one's occupation." However, expanding the definition of "goods or chattels . . . kept for the purpose of trade" to include the tools of one's profession – thus, "goods" of *a* trade – is not warranted by the text as a whole.

Applying the canon of *ejusdem generis*, a common aid for statutory construction, confirms the most natural meaning of the phrase "for the purpose of trade." When using this principle (a Latin term meaning "of the same kind or class"), this court interprets general words or phrases that follow a specific list "'to include only items of the same type as those listed.'" *Nat'l Ass'n of Postmasters of the United States v. Hyatt Regency Washington*, 894 A.2d 471, 476 (D.C. 2006) (quoting *Black's Law Dictionary* 556 (8th ed. 2004)). In the burglary statute, the

phrase "any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade" begins with specific references to lumber and coal and ends with the general term "other goods." This progression signals Congress's intent to protect only goods that are "of the same class" as lumber and coal. A common sense reading of the statute suggests that these goods must, like lumber and coal, be *commercial* objects similarly "deposited and kept for the purpose of trade."

Even though lumber and coal could also be materials used in a profession or business (for example, by a carpenter or a company generating electricity), we adhere to the most common understanding of a lumberyard or coal yard – a yard where lumber or coal intended for sale ("for purposes of trade") is stored ("deposited and kept").

As the government failed to prove that the casings kept in the Nicholson construction site would later be sold, bartered, or exchanged, or that Nicholson kept the casings there *for the purpose of* a future commercial transaction rather than for the current needs of the construction project, the construction site cannot be considered a "yard" under the burglary statute.

Even if we were to agree with the government that the site deserves more protection than that afforded by the District of Columbia's theft and unlawful entry statutes, it is the role of the Council and not this court to expand the statute's definition of "any yard" to encompass places like construction sites, where tools and materials are kept not for the purpose of trade but for use in one's profession or business.

### III. Unlawful Entry

This holding by no means suggests that appellant's conduct was innocent or nothing more than theft. Appellant clearly entered the construction site unlawfully and, as a fall-back argument, the government requests that we direct the trial court to enter judgment for the lesser-included offense of unlawful entry. "It is well-established that this court 'may direct [or allow] the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense.'" *Robinson v. United States*, 100 A.3d 95, 110 (D.C. 2014) (quoting *Gathy v. United States*, 754 A.2d 912, 919 (D.C. 2000)).

Appellant responds that we cannot continue to treat unlawful entry as a lesser-included offense of burglary because, under the *Blockburger* test, unlawful

entry requires an element of proof that burglary does not. *See Byrd v. United States*, 598 A.2d 386, 389 (D.C. 1991) (en banc) (adopting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *see also Alfaro v. United States*, 859 A.2d 149, 155-56 (D.C. 2004) (defining a lesser-included offense). *Compare* D.C. Code § 22-801 (burglary requires entry with intent to commit a crime), *with* D.C. Code § 22-3302 (unlawful entry requires entry without lawful authority and against the will of the lawful owner).[2]

Even if, upon a fresh examination, these offenses would not satisfy *Blockburger*, we need not consider this argument because appellant specifically requested the trial court to instruct the jury, "with regard to the burglary, [on] the lesser included offense of unlawful entry (as reflected in Redbook Instruction 5.401))." "We have repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal." *Brown v. United States*, 627 A.2d 499, 508 (D.C. 1993).

---

[2] Thus, it is possible to commit burglary without violating the unlawful entry statute. *See, e.g.*, *Parker v. United States*, 449 A.2d 1076, 1077 (D.C. 1982) (holding appellants committed burglary, but not unlawful entry, because appellants, employed by the Capital Hilton Hotel to wash windows, were authorized to be in the very hotel rooms from which they stole several items).

Additionally, there is ample evidence that appellant did, in fact, commit unlawful entry. By convicting appellant of burglary, which in this case required the government to prove beyond a reasonable doubt that the defendant "*entered* a yard of another where goods are kept . . . [with the intent to] commit a theft," the jury found that appellant intentionally entered the construction site. The government also established that appellant lacked the lawful authority or the permission of the Nicholson Construction Company to enter the site, which was fenced, locked, and posted with "no trespassing" signs. Officer Gulich testified that appellant admitted that he neither worked on the site nor was authorized to be there, and a project manager of Potomac Construction corroborated those facts. The record thus leaves no reasonable doubt that appellant entered the site without lawful authority and without the permission of Nicholson Construction Company.

## IV. Conclusion

Leaving intact appellant's conviction for second-degree theft (not challenged on appeal), we remand with instructions to vacate the convictions for burglary and RSP and to enter judgment for the offense of unlawful entry.

*It is so ordered*.