*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-812

JAMES KANE, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

FILED
District of Columbia
Court of Appeals

03/22/2018

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-3386-14)

(Hon. Jeanette J. Clark, Trial Judge)

(Argued September 20, 2016                    Decided March 22, 2018)

*Don Padou* for appellant.

*Carl J. Schifferle*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, were on the brief, for appellee.

Before GLICKMAN, EASTERLY, and MCLEESE, *Associate Judges*.

GLICKMAN, *Associate Judge*:  This appeal is from the dismissal of a lawsuit

seeking public records from an Advisory Neighborhood Commission ("ANC")

under the District of Columbia Freedom of Information Act ("FOIA").[1] Appellant, James Kane, contends that the Superior Court erred in upholding ANC 2F's assertion of the deliberative process privilege to redact or withhold certain documents responsive to his FOIA request. Mr. Kane does not challenge the court's determination that ANC 2F established the applicability of the privilege to the documents in question. Instead, he argues that the ANC was precluded from asserting the deliberative process privilege with respect to those documents by provisions of the Advisory Neighborhood Commission Act[2] requiring it to hold open meetings and to make documents available to the public. We disagree with Mr. Kane and affirm the judgment of the Superior Court.

## I.

ANC 2F serves an area in Ward 2 that includes the neighborhood around Thomas Circle. It has eight Commissioners, each of whom represents a single-member district. The ANC has several committees, including a committee on alcoholic beverage control whose members include both Commissioners and local residents.

---

[1] D.C. Code §§ 2-531—2-540 (2016 Repl.).

[2] D.C. Code §§ 1-309.01—1-309.15 (2016 Repl.).

In 2009, according to the undisputed allegations in Mr. Kane's complaint, a restaurant near Thomas Circle named Ghana Cafe received a District of Columbia liquor license that was contingent on a settlement agreement its owners reached with ANC 2F and other concerned parties. Mr. Kane was a signatory to this multi-party agreement. Some four years later, Ghana Cafe sought changes to the agreement to permit it to offer live music and institute a cover charge. At a public meeting on March 5, 2014, the Commissioners of ANC 2F voted 6-1 in favor of replacing the 2009 agreement with a new agreement to accommodate Ghana Cafe's needs.

Mr. Kane was opposed to this accommodation. Following the vote, he sent ANC 2F a FOIA request for documents relating to Ghana Cafe's license or any other liquor licenses for establishments within the ANC's jurisdiction. The request sought documents in the possession of the ANC or its Commissioners, employees, or committee members, and specifically called for a search of the personal and government email accounts of ANC Commissioners. The Chairman of ANC 2F notified Mr. Kane that the ANC would be unable to respond to "the totality" of his request in a reasonable time frame in view of its breadth and asked him to consider

narrowing the request to records involving Ghana Cafe.[3]  Mr. Kane then commenced this lawsuit in Superior Court, seeking a declaration that the District had violated FOIA and an injunction requiring it to produce documents responsive to his FOIA request.  In an amended complaint, Mr. Kane alleged that the ANC's failure to search for and produce the documents he requested violated not only FOIA but also the open meeting and informational disclosure requirements in the ANC Act, specifically D.C. Code § 1-309.11 (g).

The District filed its answer and moved for judgment on the pleadings, arguing that it was not a proper defendant because ANC 2F is not an agency subordinate to the Mayor's authority and Mr. Kane had not sought Mayoral intervention prior to filing suit pursuant to D.C. Code § 2-537.  The Superior Court denied the motion, ruling that the District was a proper defendant because the ANC is part of the District Government.

---

[3]  The Chairman explained that Mr. Kane's request encompassed "literally thousands of potentially responsive documents" and that it would require an inordinate amount of time "to review individual records to determine if redactions were necessary or if they are otherwise impinged upon by privileges set forth in law, and to reformat and prepare the responsive documents."  The Chairman noted that he served in a volunteer capacity and that ANC 2F had no full-time, paid staff.

After the lawsuit was under way, ANC 2F produced several thousand pages of unredacted documents that it considered to be responsive to Mr. Kane's request and not exempt from disclosure, together with privilege logs (commonly referred to as *Vaughn* indices[4]). The logs listed documents withheld or redacted pursuant to two FOIA exemptions, namely the ANC's deliberative process privilege[5] and the personal privacy exemption.[6] In accompanying affidavits, the Chairman and Vice-Chairman of ANC 2F represented that the materials withheld in their entirety pursuant to the deliberative process privilege were "draft versions of ANC 2F documents which reflect pre-decisional deliberations"; that redacted portions of produced emails contained "internal pre-decisional deliberations weighing, discussing, editing, revising, advising on, and advocating for a broad range of ANC 2F official governmental actions"; and that "[a]ll materials withheld pursuant to the deliberative process privilege were part of internal correspondence between ANC Commissioners, staff, committee members, or District of Columbia

---

[4] *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).

[5] As explained *infra*, the deliberative process privilege is incorporated in the exemption for inter-agency and intra-agency memoranda set forth in D.C. Code § 2-534 (a)(4).

[6] *See* D.C. Code § 2-534 (a)(2) (exempting from disclosure "[i]nformation of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy").

government personnel," and not with any other individuals. The internal correspondence was mostly email traffic.

The document production was accomplished in three stages. The affiants represented that ANC commissioners and staff had performed diligent searches for all materials responsive to Mr. Kane's FOIA request. In addition, an employee in the District of Columbia Office of the Chief Technology Officer provided an affidavit stating that he had conducted a thorough search of government email accounts for emails responsive to the FOIA request and had produced what he had found.

In a motion for summary judgment, Mr. Kane sought an order requiring production of the documents withheld under the deliberative process privilege. He contended that the ANC's assertion of that privilege was improper because the ANC Act required it to conduct its business only at meetings open to the public and to make available to the public all documents that were not related to personnel or legal matters. (Mr. Kane did not seek disclosure of the information withheld under the personal privacy exemption, however.) In essence, Mr. Kane argued, FOIA does not empower a public body to withhold information when other

law mandates its disclosure, and the ANC Act "acts as a waiver of most FOIA exemptions including the deliberative process exemption."

The Superior Court denied Mr. Kane's motion. Without directly addressing his statutory contentions, the court concluded that the ANC could assert the deliberate process privilege and that its "very descriptive and thorough" *Vaughn* indices, coupled with its officers' affidavits, confirmed that the withheld or redacted records were predecisional and part of a deliberative process. Holding that the District therefore had met its burden of demonstrating that the withheld materials were privileged and exempt from disclosure, and that the District had complied with its obligations under FOIA to search for and produce non-exempt records responsive to Mr. Kane's request, the court proceeded to dismiss the case. This appeal followed.

## II.

Before we consider whether ANC 2F properly asserted the deliberative process privilege, we must address the District's threshold contention, re-presented on appeal, that dismissal was required because it is not a proper party to this lawsuit. The District argues that "while ANC 2F is part of the District government," the Mayor "does not control or supervise ANCs or their

Commissioners."[7]  Therefore, the District asserts, it would be "powerless to comply" with an injunction to provide the documents that Mr. Kane is requesting,[8] and "[i]f a defendant cannot provide the requested relief, the defendant should be dismissed."[9]

We are not persuaded by the District's argument.  First, it is by no means clear from the record before us that the District actually is unable to turn over the documents that have been withheld or redacted under the deliberative process privilege.  We understand that a number of these documents were found in the government email accounts maintained by the District of Columbia Office of the Chief Technology Officer, meaning they always have been in the District's possession and under its control.  In addition, the privilege logs indicate that all the listed documents have been collected and numbered for purposes of the litigation ("Bates-numbered").  It may well be the case that the Attorney General has acquired custody of the documents and is empowered to produce them if ordered to do so by the court.

---

[7]  Brief for Appellee at 33.

[8]  *Id.*

[9]  *Id.* (quoting *Francis v. Recycling Sols., Inc.*, 695 A.2d 63, 70 (D.C. 1997)).

Second, as Mr. Kane alleged in his complaint and the District does not deny, ANCs are *non sui juris* entities – they cannot sue or be sued in their own name, nor may Commissioners sue or be sued in their stead, i.e., in their official rather than personal capacities.[10] A person aggrieved by the action or inaction of a *non sui juris* body within the District government must name the District as the defendant in order to sue for relief.[11]

Although the District does not dispute this general principle, it argues that FOIA creates an exception allowing for suit against *non sui juris* entities by providing in D.C. Code § 2-537 (b) that the Superior Court "may enjoin *the public body* from withholding records." (Emphasis added.) The District cites no

---

[10] *See* D.C. Code § 1-309.10 (g) (stating that an ANC "shall not have the power to initiate a legal action in the courts of the District of Columbia or the federal courts, provided that this limitation does not apply to or prohibit any Commissioner from bringing suit as a citizen"); *Francis*, 695 A.2d at 71 (stating that "a noncorporate department within a municipal corporation is not sui juris," and that the director of such a department cannot sue on its behalf in her official capacity); *Braxton v. Nat'l Capital Hous. Auth.*, 396 A.2d 215, 216 (D.C. 1978) (explaining that, in the absence of statutory authorization, noncorporate bodies within the District of Columbia government "are not suable as separate entities").

[11] *See Zirkle v. District of Columbia*, 830 A.2d 1250, 1253 n.1 (D.C. 2003) (suit alleging misconduct of *non sui juris* agency of the District properly brought against the District, not the agency); *Braxton*, 396 A.2d at 216-17 (suit alleging negligence by the National Capital Housing Authority properly brought against the District of Columbia because it was a *non sui juris* agency of the District).

authority in support of this interpretation of the statute's sweep. Even if the interpretation is correct, however, it does not follow that a *non sui juris* "public body" can and must be named as the party defendant instead of the District government of which it is a component part. We see no reason why an injunction issued in a FOIA suit against the District cannot specifically be directed to the *non sui juris* "public body" within the District government.

Third, the Mayor does not appear to be as "powerless" to secure an ANC's compliance with its FOIA obligations as the District suggests. For one thing, FOIA itself empowers the Mayor upon petition to "order" a public body to disclose a wrongfully withheld public record.[12] The District points out that Mr. Kane could have petitioned the Mayor for this relief but chose not to do so in order to go directly to court.[13] But if the Mayor could "order" ANC 2F to comply with FOIA at Mr. Kane's request, surely the Mayor could do so at the court's direction.

---

[12] D.C. Code § 2-537 (a) provides an optional administrative appeal procedure, pursuant to which "any person denied the right to inspect a public record of a public body may petition the Mayor to review the public record to determine whether it may be withheld from public inspection." Subsection (a)(2) provides in pertinent part that "[i]f the Mayor decides that the public record may not be withheld, he shall order the public body to disclose the record immediately."

[13] Mr. Kane was not required to appeal to the Mayor under § 2-537 (a) in order to exhaust his administrative remedies. *See* D.C. Code § 2-532 (e).

Apart from FOIA, moreover, the ANC Act envisages a Mayoral and executive branch role in the direction of ANC operations. D.C. Code § 1-309.12 (d)(3)(E) specifies that the Mayor "shall provide" to ANCs "[a]ny . . . assistance necessary to ensure that a Commission is able to perform its statutory duties." Relatedly, the Attorney General is required by law to "provide legal interpretations of statutes concerning or affecting the Commissions, or of issues or concerns affecting the Commissions."[14] Under these statutes, the Mayor and the Attorney General have authority to assist ANCs in complying with their FOIA obligations. Even if their exercise of that authority is not without limits, a court may require them to exercise it; as a practical matter, we think it unlikely that an ANC would reject their guidance.

For these reasons, we decline to affirm the dismissal of Mr. Kane's FOIA lawsuit on the ground that the District of Columbia was not a proper party defendant.

---

[14] D.C. Code § 1-309.12(d)(4) (added by D.C. Law 21-269, § 2 (g), 64 D.C. Reg. 2162, 2166 (Feb. 24, 2017)).

## III.

The ANC Act provides that "any person has a right to inspect, and at his or her discretion, to copy any public record" of an ANC, "except as otherwise expressly provided by [D.C. Code] § 2-534."[15] The cited provision lists seventeen exemptions from FOIA's disclosure requirements. Exemption 4 allows public bodies to withhold "[i]nter-agency or intra-agency memorandums or letters . . . which would not be available by law to a party other than a public body in litigation with the public body."[16] This exemption encompasses documents within a public body's deliberative process privilege.[17] That privilege "shelters documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[18] In order to come within the deliberative process privilege,

---

[15] D.C. Code § 1-309.13 (p).

[16] *Id.* § 2-534 (a)(4).

[17] *See id.* § 2-534 (e).

[18] *Fraternal Order of Police v. District of Columbia*, 79 A.3d 347, 354-55 (D.C. 2013) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

"information must be both 'predecisional' and 'deliberative.'"[19] In this case, the Superior Court determined that these criteria were shown to be met by the documents for which ANC 2F asserted the deliberative process privilege.[20]

Mr. Kane does not challenge that determination on appeal with respect to any particular withheld or redacted documents.[21] Instead, he argues that the ANC was precluded from asserting the deliberative process privilege because it is required by the ANC Act (1) to deliberate in the public eye and (2) to permit public inspection of all documents in its possession that are not related to personnel or legal matters. These contentions raise pure questions of law, as to which our review is *de novo*.[22]

---

[19] *Id.* at 355 (quoting *Petroleum Info. Corp.*, 976 F.2d at 1434). "A document is 'predecisional' if it was prepared in order to assist an agency decision maker in arriving at his decision rather than to support a decision already made, and material is 'deliberative' if it reflects the give-and-take of the consultative process." *Id.*

[20] The government bears the burden of demonstrating that documents qualify for an exemption from disclosure. *See District of Columbia v. Fraternal Order of Police*, 75 A.3d 259, 264 (D.C. 2013).

[21] We therefore express no view in this opinion as to whether the Superior Court correctly ruled that all the information withheld by ANC 2F met the criteria of the deliberative process privilege.

[22] *See, e.g.*, *O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 383 (D.C. 2012).

The first contention turns on the proper interpretation of the term "official action" in D.C. Code § 1-207.42 (a) (2016 Repl.), which is commonly known as the District's Sunshine Act. The ANC Act states that ANCs are "subject to the open meetings provisions of § 1-207.42 (a),"[23] which say:

> All meetings (including hearings) of any department, agency, board, or commission of the District government, including meetings of the Council of the District of Columbia, at which official action of any kind is taken shall be open to the public. No resolution, rule, act, regulation, or other official action shall be effective unless taken, made, or enacted at such meeting.

Mr. Kane argues that ANC Commissioners' predecisional, deliberative exchanges are "official actions" within the meaning of these provisions, and that the Sunshine Act therefore requires such exchanges to take place at public meetings.[24] It follows, he argues, that ANC 2F cannot invoke the deliberative process privilege to shield such exchanges from public disclosure.

---

[23] D.C. Code § 1-309.11 (g).

[24] Relatedly, Mr. Kane argues that ANC Commissioners are engaged in "meetings" within the meaning of the Sunshine Act when they communicate by email rather than in person. We need not resolve this question, though we note that while the District's Open Meetings Act (discussed *infra*) recognizes that meetings may be held electronically rather than in person, it provides that "[e]-mail exchanges between members of a public body shall not constitute an electronic meeting." D.C. Code § 2-577 (c) (2016 Repl.).

The Sunshine Act does not contain an explicit definition of the term "official action."  In our view, however, the term cannot bear the broad meaning Mr. Kane proposes.  His interpretation is implausible not only because it would virtually obliterate FOIA's explicit recognition of a government-wide privilege for non-public deliberations,[25] but because it conflicts with the text of the Sunshine Act itself.  That Act speaks of an "official action" as one that becomes "effective" after being "taken, made, or enacted."  These are not words that readily apply to predecisional deliberations.  Significantly, moreover, the second sentence of § 1-207.42 (a) uses "official action" as a catch-all term at the end of a more specific list of such actions; applying the canon of *ejusdem generis*, "this court interprets general words or phrases that follow a specific list to include only items of the same type as those listed."[26]  Thus, we infer that "official action" within the meaning of the Sunshine Act must be akin to a "resolution, rule, act, [or] regulation" – that is, it must be a formal action having some legal or dispositive effect rather than predecisional deliberation or just any action undertaken in the

---

[25]  *See* D.C. Code § 2-534 (e) (incorporating the deliberative process privilege and other privileges under the inter-agency memoranda exemption and stating that "these privileges . . . shall extend to any public body that is subject to this subchapter [i.e., FOIA]").

[26]  *Sydnor v. United States*, 129 A.3d 909, 912 (D.C. 2016) (internal quotation marks omitted).

performance of official duties. That is, we think, the "common sense reading of the statute."[27]

It is also how the District of Columbia Council read the Sunshine Act when it enacted the Open Meetings Act of 2010.[28] The accompanying Committee Report explained that the Open Meetings Act was designed to expand public access to government meetings beyond the access afforded by the Sunshine Act, which "only covers meetings where official action is taken."[29] To that end, the Committee Report stated, the Open Meetings Act "broaden[ed] current law" by defining the meetings that are open to the public to include "any gathering of a quorum of the members of a public body where the members consider, conduct, or advise on public business."[30] "[N]ot only would this include any meeting where official action is taken," the Committee Report elaborated, it "would also include any meetings in preparation for official action or where official action is being

---

[27] *Id.* at 913.

[28] D.C. Code §§ 2-571—2-580 (2016 Repl.).

[29] D.C. Council, Report on Bill 18-716, the "Open Meetings Act of 2010," at 3 (December 2, 2010) (hereinafter, "Committee Report").

[30] *Id.* at 5; *see* D.C. Code § 2-574 (1).

discussed."[31] This explanation confirms our conclusion that the Sunshine Act cannot be read to require ANCs to conduct predecisional deliberations (whether or not they are privileged) in public.[32] Furthermore, the Council specifically exempted ANCs from the more stringent public access requirements of the Open Meetings Act while stating that ANCs remain subject to the open meetings provisions of the Sunshine Act.[33] Accordingly, we hold that ANC 2F's assertion of the deliberative process privilege in this case did not contravene its statutory obligation to take official action at meetings open to the public.[34]

---

[31] Committee Report at 5.

[32] We express no view as to whether, or to what extent, the Open Meetings Act precludes public bodies subject to its strictures from asserting the deliberative process privilege. *Cf.* D.C. Code § 2-534 (e) (providing that the deliberative process privilege and other privileges "shall extend to any public body that is subject to" FOIA).

[33] *See* D.C. Code § 2-574 (3) ("The term 'public body' shall not include . . . (F) Advisory Neighborhood Commissions; provided, that this subchapter shall not affect the requirements set forth in § 1-309.11.").

[34] Lest we be misunderstood, we do not mean to suggest that ANCs need to conduct open meetings *only* when they are required to do so by the Sunshine Act. The ANC Act requires ANCs to meet in public session at regular intervals, not only to take official action, but also for such purposes as considering and making recommendations on public matters and hearing the views of residents and other affected persons on problems or issues of concern. *See* D.C. Code § 1-309.11 (b). This does not mean, however, that *all* deliberations by ANC Commissioners must occur in public or be open to the public.

Mr. Kane's second contention is based on a provision the Council added to D.C. Code § 1-309.11 (g) in the Comprehensive Advisory Neighborhood Commissions Reform Amendment Act of 2000 (hereinafter the "ANC Amendment Act").[35]  The added provision read as follows:

> Without limiting the scope of that section [i.e., the Sunshine Act, § 1-207.42 (a)], the following categories of information are specifically made available to the public:
>
> (1) The names, salaries, title, and dates of employment of all employees of the Commission;
>
> (2) Final decisions of the Commission, including concurring and dissenting opinions;
>
> (3) Information of every kind dealing with the receipt or expenditures of public or other funds by the Commission;
>
> (4) *All documents not related to personnel and legal matters*;
>
> (5) The minutes of all Commission meetings; and
>
> (6) Reports of the District of Columbia Auditor.

(Emphasis added.)  Mr. Kane contends that in this provision, the Council waived not only the deliberative process privilege but virtually all FOIA exemptions that would otherwise be applicable to ANC documents.  This is so, he argues, because

---

[35]  D.C. Law 13-135, § 3 (b), 47 D.C. Reg. 2741, 2750 (June 27, 2000).

FOIA itself states that its exemptions "shall not operate to permit nondisclosure of information of which disclosure is authorized or mandated by other law,"[36] and § 1-309.11 (g)(4) constitutes such "other law" inasmuch as it specifically mandates disclosure of "[a]ll [ANC] documents not related to personnel and legal matters." As additional support for his argument that § 1-309.11 (g)(4) "take[s] precedence" over the enumeration of FOIA exemptions in § 2-534, Mr. Kane invokes the canon of statutory construction that "a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms."[37]

We do not agree that § 1-309.11 (g)(4) waived the deliberative process privilege or, indeed, any FOIA exemptions. In the very same legislation in which the Council amended § 1-309.11 (g), it also amended § 1-309.13 (p) to add the language quoted earlier in this opinion specifically addressing the applicability of FOIA. To repeat, the added language provided that members of the public have a right to inspect and copy "any public record of [an ANC], except as otherwise

---

[36] D.C. Code § 2-534 (c).

[37] *In re G.K.*, 993 A.2d 558, 567 (D.C. 2010) (internal quotation marks omitted); Brief for Appellant at 15.

expressly provided by [D.C. Code] § 2-534,"[38] the section that lists all the available FOIA exemptions including the deliberative process privilege. In other words, far from waiving any FOIA exemptions, the ANC Amendment Act explicitly preserved them. Construing § 1-309.11 (g) as abrogating those exemptions therefore would "create a square conflict between the two statutory provisions, a conflict the Council of the District of Columbia could not have intended."[39]

In fact, although § 1-309.11 (g)(4) permits an ANC to withhold documents only if they are "related to personnel and legal matters," nothing in the legislative history of the ANC Amendment Act suggests that the Council meant these words to limit the availability of the deliberative process privilege or any of the other FOIA exemptions referenced in § 1-309.13 (p). If anything, the Committee Report on the Act treats documents covered by FOIA exemptions as equivalent to, or as a subset of, documents "related to personnel and legal matters," for it states that § 1-309.13 (p) (which explicitly incorporates all the FOIA exemptions) "expressly" permits public inspection of ANC records "unless that information is protected by

---

[38] D.C. Law 13-135, § 3 (d).

[39] *Atiba v. Washington Hosp. Ctr.*, 43 A.3d 940, 941-42 (D.C. 2012).

its legal nature or is related to personnel."[40]  We need not agree that the two statutory provisions are equivalent to recognize that the Report's characterization of § 1-309.13 (p) rebuts Mr. Kane's contention that § 1-309.11 (g)(4) amounts to a waiver or curtailment of the deliberative process privilege and virtually all the rest of the exemptions from FOIA.[41]  Recently, moreover, the Council confirmed our understanding that § 1-309.11 (g)(4) did no such thing.  In the Advisory Neighborhood Commissions Omnibus Amendment Act of 2016, the Council added a proviso to § 1-309.11 (g) stating explicitly that the six listed categories of information (including "(4) All documents not related to personnel and legal matters") shall be available to the public *"subject to [§ 2-534]."*[42]  We view this

---

[40] D.C. Council, Report on Bill 13-468, the "Comprehensive Advisory Neighborhood Commissions Reform Amendment Act of 2000," at 12 (January 11, 2000).

[41] The language of the Committee Report similarly lends no support to Mr. Kane's suggestion that § 1-309.11 (g)(4) significantly *limits* § 1-309.13 (p), so that "an ANC cannot invoke the deliberative process exemption to shield from disclosure those records that are not related to personnel or legal matters."  Brief for Appellant at 18.  We consider such a novel restriction on the applicability of the privilege to be both vague and unwarranted because it begs the question of what §1-309.11 (g) means by "related to personnel and legal matters," conflicts with § 1-309.13 (p)'s treatment of FOIA's exemptions as potentially applicable to all ANC records regardless of their particular character, and lacks a persuasive policy rationale.

[42] *See* D.C. Law 21-269, § 2 (f), 64 D.C. Reg. 2162, 2166 (emphasis added).  A fiscal contingency stalled the effective date of this amendment of § 1-309.11

*(continued…)*

unheralded amendment not as a substantive change in the statute, but as a clarification of it.[43]

Accordingly, we reject Mr. Kane's second contention and hold that D.C. Code § 1-309.11 (g)(4) did not preclude ANC 2F from asserting the deliberative process privilege to withhold information in response to Mr. Kane's FOIA request.

---

*(…continued)*

until December 13, 2017, when the contingency was removed by § 7036 of the Fiscal Year 2018 Budget Support Act of 2017, D.C. Law 22-33, 64 D.C. Reg. 7652, 7747 (Aug. 11, 2017).

[43]  If we viewed the recent amendment of § 1-309.11 (g) as substantively changing the law, we would ask the parties to address the applicability of the change to this and other cases pending when the amendment went into effect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994) ("Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations.  When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."); *id.* at 280 (when the legislature has not answered the question, applicability of a new statute to pending cases turns on "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.").  New FOIA exemptions have been held applicable to pending cases. *See City of Chicago v. U.S. Dep't of the Treasury*, 423 F.3d 777, 783 (7th Cir. 2005); *Sw. Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 314 F.3d 1060, 1062 (9th Cir. 2002).

**IV.**

For the foregoing reasons, the judgment of the Superior Court dismissing Mr. Kane's FOIA suit against the District of Columbia is hereby affirmed.

*So ordered.*