*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 22-AA-0449, 22-AA-0450 & 22-AA-0469

OFFICE OF THE PEOPLE'S COUNSEL FOR THE DISTRICT OF COLUMBIA,
PETITIONER/CROSS-RESPONDENT,

v.

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,
RESPONDENT/CROSS-PETITIONER.

Petition for Review from the District of Columbia Water & Sewer Authority
(Nos. 2021-424908 & 2022-78202)

(Janet W. Blassingame, Hearing Officer)

(Argued January 11, 2024                    Decided April 18, 2024)

*Scott H. Strauss*, with whom *Sandra Mattavous-Frye*, *Elizabeth Beltran*, and *Amanda C. Drennen* were on the brief, for petitioner/cross-respondent.

*Emil Hirsch*, with whom *Barbara K. Mitchell* and *Emily Green* were on the brief, for respondent/cross-petitioner.

Before DEAHL, HOWARD, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: In 2021, District of Columbia residents Matthew Roberts and Timothy Melham brought separate challenges to their water bills from the D.C. Water & Sewer Authority ("D.C. Water"), suspecting that they were being overcharged due to equipment malfunctions. A Hearing Officer denied both of their

requests for adjustments to their bills. The Office of the People's Counsel for the District of Columbia ("OPC") appealed the Hearing Officer's decisions to this court. We hold that because OPC was not a party to the proceedings before the Hearing Officer, it cannot appeal the Hearing Officer's decisions. That power remains with the consumers, Messrs. Roberts and Melham. Accordingly, we dismiss the appeals for lack of standing.

## I.      Background

Messrs. Roberts and Melham disputed their water bills at different times and in different proceedings. When they appealed D.C. Water's denial of their claims to a Hearing Officer, OPC served as counsel for both of them in two separate administrative hearings before the same Hearing Officer and in the same month. The Hearing Officer affirmed D.C. Water's denial of the claims in both cases. OPC, acting in its own name, petitioned this court for review of both cases. We ordered the cases consolidated.

### A.      Mr. Roberts's Case

Mr. Roberts noticed an uptick in his water bill tracing back to his July 2020 bill, which covered the month of June 2020. In April 2021, after he ruled out potential innocuous causes, such as his new sprinkler system, he contacted D.C.

Water to ask about his situation. He wrote in his email to the agency: "something is off with my water bill and need some help. My bills have drastically increased since last June[,] and we are not doing anything different. Thoughts?" On D.C. Water's recommendation, Mr. Roberts hired a plumber to inspect his property. The plumber found a broken toilet flapper, which they fixed. Yet the heightened water bills persisted. Mr. Roberts asked the plumber to return and check for leaks, but the plumber found nothing.

Having failed to resolve the issue, Mr. Roberts disputed his May 2021 bill and stated that "[t]he origins of this [billing issue] started in June of 2020, so if we had the option to, we would dispute the charges all the way to that point." D.C. Water denied his claim for the May bill and informed him that his dispute of all prior bills was untimely. Mr. Roberts requested an administrative hearing to appeal D.C. Water's decision. While awaiting the administrative hearing, Mr. Roberts continued to dispute his new bills.

In August 2021, D.C. Water tested Mr. Roberts's water meter and concluded that it was performing outside the acceptable range, registering at 101.77% (0.27% above the maximum acceptable reading). D.C. Water then adjusted Mr. Roberts's bills for the months that he had timely disputed them (the months after April 2021), totaling $386.56 in adjustments. D.C. Water did not adjust his remaining bills.

At the administrative hearing, where Mr. Roberts was represented by OPC, the Hearing Officer affirmed D.C. Water's denial of Mr. Roberts's request for relief. They explained that, in their view, multiple other factors could have "caused or contributed to" the increase in Mr. Roberts's bills. OPC petitioned this court for review of the Hearing Officer's determination. D.C. Water cross-petitioned for review of Mr. Roberts's case, arguing that the Hearing Office should have dismissed Mr. Roberts's claims for failure to timely dispute his bills.

### B.    Mr. Melham's Case

Mr. Melham lives with his brother, Mark Melham, in a single-family residence. Between February 11, 2021, and February 18, 2021, the water usage at their residence spiked dramatically, reaching 37,000 gallons of water, roughly ten times the normal usage. Before and after February 2021, the Melhams' water bills ranged from approximately $100 to $120. For the month of February, however, their bill rose to around $780. Water usage receded to normal levels after February 18. D.C. Water issued high-water-usage alerts on February 13 and 19 to inform the Melhams of the heightened usage. The customers hired a plumber to inspect the property, and the plumber found no leaks, running toilets, or other problems that would cause such a spike. D.C. Water investigated the meter and found that it was functioning within accepted parameters. Mr. Melham contested his February bill,

and D.C. Water declined to adjust it. Mr. Melham, represented by OPC, appealed that decision to the Hearing Officer.

The Hearing Officer affirmed D.C. Water's denial of Mr. Melham's claim. They explained that "the weight of the evidence was that the water usage occurred and nothing was wrong with [D.C. Water's] equipment." Although Mr. Melham had presented testimony from a mechanical engineer suggesting that only a digital error could explain the increased water usage, the Hearing Officer concluded that the "testimony was based upon speculation of a system error having occurred, and [D.C. Water] refuted [the] testimony by testimony and evidence of no error notations on the meter read log, testing of the water meter, and verification of the meter read when the meter was pulled for testing." OPC petitioned this court for review of the Hearing Officer's decision.

## C.    Procedural History

Both of OPC's petitions were captioned "Office of the People's Counsel For the District of Columbia v. District of Columbia Water and Sewer." The first sentence of both petitions reads: "The Office of the People's Counsel for the District of Columbia . . . , the statutory representative of District of Columbia Ratepayers and consumers with respect to water utility matters[ ], respectfully seeks review by the District of Columbia Court of Appeals . . . ." The petitions refer to the respective

case number both in the heading and in the body of the petitions, and they identify the cases as "In re: Matthew Roberts" and "In re: Timothy Melham," respectively, which is how the administrative hearings before the Hearing Officer were captioned.

After this court consolidated all three petitions (OPC's two petitions and D.C. Water's cross-petition) into a single case, D.C. Water moved to dismiss. It argued that OPC lacked standing to petition for review in both cases. In response, OPC argued that it possessed standing and, in the alternative, requested leave to amend its petitions to name Messrs. Roberts and Melham as the petitioners. A motions panel of this court deferred the issue to the merits panel.

Subsequently, OPC moved to dismiss D.C. Water's cross-petition. It argued that D.C. Water could not cross-petition for review of the Hearing Officer's decision because the Hearing Officer constituted a part of D.C. Water, which meant that D.C. Water was not aggrieved by the decision. D.C. Water responded, arguing that it was aggrieved by the Hearing Officer's decision because it was contrary to the law. The motions panel referred this issue as well to the merits panel.

## II.    Discussion

OPC primarily argues on appeal that the Hearing Officer's decisions in both Messrs. Roberts's and Melham's cases were not supported by substantial evidence.

Before we can reach this issue, however, or any other issues raised by the parties, we must determine whether OPC has standing to petition this court for review in the first place. *See Deloatch v. Sessoms-Deloatch*, 229 A.3d 486, 488 (D.C. 2020) ("We first determine whether we have jurisdiction to entertain these appeals."). Because we conclude that it does not and we dismiss the case for lack of standing, we do not reach any of the other arguments raised by the parties.

With respect to standing, OPC advances three arguments. First, OPC argues that D.C. Code § 34-2202.05a confers statutory standing upon it to litigate these claims in its own name. Second, OPC submits that it has *parens patriae* standing. Third, OPC argues that, in the event that this court concludes it lacks standing, the petitions can be read as appeals by the consumers and, in the alternative, renews its request to amend the petitions to substitute in Messrs. Roberts and Melham as petitioners. We address each argument in turn. We hold that OPC lacks standing to petition for review of Messrs. Roberts's and Melham's cases. We also conclude that the petitions cannot fairly be interpreted as appeals by the consumers, and we decline OPC's request to amend the petitions.

### A.    Legal Standard

Our analysis in this case proceeds de novo. OPC was not a party in the prior proceedings, so its standing was not in question there. Accordingly, there is no

"standard or review" for the standing issue because this court is deciding the issue in the first instance. In any event, this court reviews legal questions of standing and statutory interpretation de novo. *District of Columbia v. ExxonMobil Oil Corp.*, 172 A.3d 412, 418 (D.C. 2017); *Eaglin v. District of Columbia*, 123 A.3d 953, 955 (D.C. 2015).

Although the question in this case is one of standing, the case does not turn on the typical constitutional standing requirements: injury, traceability, and redressability. *See Kalorama Citizens Ass'n v. SunTrust Bank Co.*, 286 A.3d 525, 532 (D.C. 2022) (reciting the "requirements for constitutional standing"). Instead, the case centers on whether OPC has litigation authority to bring this appeal. Because OPC is an entity within the D.C. government, it requires a grant of litigation authority before it may sue another party. *See Kane v. District of Columbia*, 180 A.3d 1073, 1078 (D.C. 2018); *Braxton v. Nat'l Cap. Hous. Auth.*, 396 A.2d 215, 216 (D.C. 1978). If OPC lacks litigation authority to bring this appeal, it lacks standing, and we will dismiss the appeal. *See Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 99 (1994) (dismissing an appeal "for want of jurisdiction" because the agency lacked adequate litigation authority to file a petition for certiorari in the Supreme Court).

## B.     Statutory Standing

The relevant statutory provision provides OPC three distinct grants of litigation authority in cases involving D.C. Water.  *See* D.C. Code § 34-2202.05a(a). First, OPC may "[r]epresent District of Columbia ratepayers at administrative hearings when these hearings involve the interests of users of the products of or services furnished by [D.C. Water]."  *Id.* § 34-2202.05a(a)(1).  Second, OPC may "[r]epresent the interests of and advocate for District of Columbia ratepayers at public hearings held by [D.C. Water] . . . to establish and adjust water and sewer rates."  *Id.* § 34-2202.05a(a)(2).  Finally, OPC may "[r]epresent and advocate for District of Columbia ratepayers at proceedings before local and federal regulatory agencies and courts when those proceedings involve the interests of users of the products of or services furnished by [D.C. Water]."  *Id.* § 34-2202.05a(a)(3).

OPC argues that this final grant of litigation authority, codified at Section 34-2202.05a(a)(3), empowers it to appeal in its own name the denial of a consumer's claim in a proceeding to which it was not a party.  In its view, because the statute confers authority to "represent and advocate" in front of "courts" in cases "involv[ing] the interests of" D.C. Water consumers, *id.* § 34-2202.05a(a)(3), it may litigate this case in its own name rather than on behalf of Messrs. Roberts and Melham.

Reading the statutory provision as a whole, we reach a contrary conclusion: Section 34-2202.05a(a) does not empower OPC to appear as a party in this appeal. It does not grant OPC general litigation authority in cases involving D.C. Water. *Cf.* D.C. Code § 1-301.81 (granting general litigation authority to the Attorney General with the words "[t]he Attorney General shall have the power to control litigation and appeals, as well as the power to intervene in legal proceedings on behalf of [the] public interest"). Nor does it make OPC a party to proceedings involving D.C. Water, as the Council has done with OPC in other contexts. *Cf. id.* § 34-804 ("[OPC] shall be a party, as of right, in any . . . proceeding of any nature by the Public Service Commission . . . ."). Instead, Section 34-2202.05a(a) confers on OPC limited litigation authority in the context of water cases. It may "represent" consumers in administrative hearings concerning D.C. Water, *id.* § 34-2202.05a(a)(1); it may "[r]epresent the interests of and advocate for" consumers in public hearings held by D.C. Water, *id.* § 34-2202.05a(a)(2); and it may "[r]epresent and advocate for" consumers before other regulatory agencies and courts, *id.* § 34-2202.05a(a)(3). In the context of this case, that boils down to a single, discrete grant of litigation authority: to "[r]epresent and advocate for" consumers. *Id.*

Neither representing nor advocating for a group in the context of a judicial proceeding necessarily implies appearing as a party in that proceeding. The parties agree that represent, at least in this context, refers to appearing as counsel for water

consumers rather than as a party. Similarly, one can advocate in judicial proceedings without appearing as a party by, for example, appearing as amicus curiae. *See Apartment & Off. Bldg. Ass'n of Metro. Wash. v. Pub. Serv. Comm'n*, 203 A.3d 772, 784 (D.C. 2019) (observing that amicus curiae appearing in an appeal from an order by the Public Service Commission was not a party to the case). Although parties to judicial proceedings may advocate for various interests or groups, advocacy does not require party status. Accordingly, the power to advocate in a judicial proceeding does not imply the power to be a party to that proceeding.

Interpreting Section 34-2202.05a(a)(3) to permit OPC to appear as a party in its own name requires reading the single word "advocate" to confer freewheeling litigation authority upon a government agency. We see little reason to give the word such capacious reach where its plain meaning suggests otherwise.

OPC supports its contrary view with three arguments. It argues that (1) the rule against surplusage suggests a more expansive interpretation of the word "advocate," (2) OPC's litigation authority in other statutory contexts points toward its ability to appeal as a party in D.C. Water cases, and (3) the purpose animating the statute favors a liberal construction of OPC's litigation authority. We are not persuaded.

First, invoking the rule against surplusage, OPC argues that "represent" and "advocate" must carry independent meanings. It interprets "represent" to refer to serving as the consumers' lawyer—as it did in the proceedings before the Hearing Officer—and "advocate" to refer to appearing as a party to the proceeding. As we have already explained, however, "advocate for" may bear independent meaning relative to "represent" without stretching to encompass a grant of authority to appeal the Hearing Officer's decisions as a party. It could refer to appearing as amicus curiae or other forms of advocacy that do not require party status. Our interpretation, then, creates no surplusage.

Next, OPC urges us to interpret Section 34-2202.05a(a)(3) analogously with its grant of litigation authority in appeals from proceedings involving the Public Service Commission. *See* D.C. Code § 34-804. In our view, however, the comparison to Section 34-804 supports the opposite result. When the District of Columbia Council authorized OPC to appeal in proceedings involving the Public Service Commission, it made OPC "a party, as of right, in any . . . proceeding of any nature by the Public Service Commission." *Id.* § 34-804(a). Conversely, the Council did not make OPC a party to administrative proceedings involving D.C. Water, which suggests that OPC possesses less litigation authority in D.C. Water cases than in those involving the Public Service Commission.

Of course, as OPC points out, parties are not the only ones who may appeal agency decisions. *See York Apartments Tenants Ass'n v. D.C. Zoning Comm'n*, 856 A.2d 1079, 1082 n.2 (D.C. 2004). Therefore, the mere fact that OPC was not a party to the prior administrative hearings does not prove that it cannot appeal the Hearing Officer's decisions. Nevertheless, the D.C. Council's decision not to make OPC a party in D.C. Water proceedings still suggests that OPC possesses more limited litigation authority with respect to D.C. Water than it does before the Public Service Commission, where it enjoys full party status. Moreover, where the D.C. Council has given OPC litigation authority to appeal, it has said so explicitly. D.C. Code § 34-804(d)(1) (OPC "[s]hall represent *and appeal* for the people of the District of Columbia at hearings of the Commission and in judicial proceedings in the District of Columbia courts." (emphasis added)). Section 34-2202.05a(a)(3), in contrast, contains no such language. Because the D.C. Council chose not to make OPC a party as of right to proceedings involving D.C. Water and because it offered no other indication that OPC could appeal adverse administrative hearings litigated by consumers, we decline to read such litigation authority into the statute.

Finally, OPC argues that we should read Section 34-2202.05a(a)(3) in light of the statute's overall purpose, which, it submits, is to enhance consumer protection. Even assuming that OPC has ascertained the statute's overriding purpose correctly, this argument merely begs the question of how far the D.C. Council wanted to go in

enhancing consumer protection in water cases. Our interpretation of the statute already significantly expands OPC's ability to protect consumers in water cases relative to the situation before the statute's enactment. OPC may now serve as consumers' counsel, offering them free, experienced legal representation in water cases. The question before us is whether the Council intended to take the further step of permitting OPC to litigate against D.C. Water in its own name. In some situations, this authority would allow OPC to appeal against the wishes of the consumer, pitting OPC's perception of the broader consumer interest against the consumer's own wishes. In our view, neither the statute's text nor its purpose mandates this result.

### C.    *Parens Patriae* Standing

Next, OPC argues that, independent of its statutory standing, it possesses *parens patriae* standing to litigate this appeal. For similar reasons to those that lead us to reject OPC's statutory standing argument, we hold that OPC cannot bring this case in its own name via *parens patriae* standing.

*Parens patriae* standing, the Latin portion translating to "parent of the country," is a doctrine that permits a state to sue based on a sovereign injury. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600-01 (1982). This court has identified two classes of interests that may satisfy *parens patriae*

standing: a sovereign interest and a quasi-sovereign interest. *See ExxonMobil Oil Corp.*, 172 A.3d at 421. A sovereign interest pertains to enforcing the sovereign's legal code. *Id.* A quasi-sovereign interest refers to an injury that affects a "substantial segment of [the sovereign's] population" and that the sovereign "would likely attempt to address through its sovereign lawmaking powers." *Alfred L. Snapp & Son*, 458 U.S. at 607. OPC asserts that it, on behalf of the District, has suffered both kinds of injuries.

Before it can sue in *parens patriae*, however, OPC must have legislative authority to take such an action. OPC is not a private citizen with implied legal rights such as the ability to sue. Rather, it is a part of the D.C. government. To use the legal terminology, OPC is not *sui juris*. *See Kane v. District of Columbia*, 180 A.3d 1073, 1078 (D.C. 2018) ("*[N]on sui juris* entities . . . cannot sue or be sued in their own name . . . ."); *Braxton v. Nat'l Cap. Hous. Auth.*, 396 A.2d 215, 216 (D.C. 1978) ("A noncorporate department or other body within a municipal corporation is not *[s]ui juris*." (emphasis added)); *Director, Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 132 (1995) ("Agencies do not automatically have standing to sue for actions that frustrate the purposes of their statutes."); *see also Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (listing D.C. government agencies held to be *sui juris*). Rather, OPC, like other government entities, depends on legislative authorization to

sue another party. *See Francis v. Recycling Sols., Inc.*, 695 A.2d 63, 71 (D.C. 1997) (suggesting that because a government entity was not *sui juris*, it would require "statutory authority" to sue); *cf. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. at 129 ("[T]he United States Code displays throughout that when an agency in its governmental capacity *is* meant to have standing, Congress says so.").

We hold that OPC lacks statutory authorization to sue in *parens patriae*. OPC does not possess general litigation authority. Instead, the D.C. Council delineated its authority to litigate through the statutes discussed above. This limited authority contrasts with the D.C. Attorney General's plenary authority to litigate. *See* D.C. Code § 1-301.81(a)(1). It thus generally falls to the Attorney General to bring *parens patriae* suits. *See, e.g.*, *ExxonMobil Oil Corp.*, 172 A.3d at 423 (reversing the trial court, which had dismissed a suit by the D.C. Attorney General for lack of *parens patriae* standing). True, general litigation authority is not a prerequisite to *parens patriae* standing. The D.C. Council could grant OPC authority to litigate cases in *parens patriae* without granting it general litigation authority if it wished. *Cf. Md. People's Counsel v. FERC*, 760 F.2d 318, 321-22 (D.C. Cir. 1985) (Scalia, J.) (holding that Congress may confer *parens patriae* standing upon state entities like OPC, at least under certain circumstances). But, as illustrated by the foregoing

analysis, there is no evidence it did so here. OPC cannot claim *parens patriae* standing in this case.[1]

### D. Construing or Amending OPC's Petition

Finally, OPC presents an argument in the alternative. If we are inclined to hold that OPC lacks standing to appeal in this case—as we are—OPC argues that we should treat this case as one in which Messrs. Roberts and Melham themselves appealed. We should do this, says OPC, on either of two grounds. First, in OPC's view, the petitions for review, fairly construed, were appeals by Messrs. Roberts and Melham even if they were not mentioned in the captions. Second, even if Messrs. Roberts and Melham cannot fairly be said to have sought review, OPC asks us to grant its request to amend the petitions and convert this case into an appeal by the consumers. In our view, the petitions for review cannot be construed as appeals by Messrs. Roberts and Melham, and we decline OPC's request to rewrite the petitions at this belated hour.

---

[1] For similar reasons, OPC cannot rely on D.C. Code § 2-510(a) as an independent avenue to standing. *See* D.C. Code § 2-510(a) ("*Any person* suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review . . . . (emphasis added)). Even assuming OPC satisfies Section 2-510(a)'s strictures in this case, as a *non sui juris* entity, OPC still requires a statutory basis for its litigation authority.

OPC contends that the petitions for review were petitions initiated by the individual consumers in addition to OPC. The petitions, it notes, name the consumers in the body of the petition, consistent with the D.C. Rules of Appellate Procedure. *See* D.C. App. R. 15(a)(3)(A) ("The petition must . . . name each party seeking review either in the caption or the body of the petition . . . .").

We read the petitions for review differently. Both petitions name only OPC in the caption. As OPC points out, the bodies of the petitions identify the individual consumers by name. The petitions, however, never refer to the consumers as the parties seeking review. Instead, both petitions state that "[t]he Office of the People's Counsel . . . respectfully seeks review" of the orders, and they remain silent with respect to Messrs. Roberts and Melham. The petitions mention the consumers only to identify which orders the petitions seek review of or to discuss the prior proceedings. These references to the consumers, then, speak only to whether the petitions satisfy D.C. App. R. 15(a)(3)(C), which requires that petitions "specify the order or decision or part thereof to be reviewed." To comply with Rule 15(a)(3)(C), the petitions would have needed to reference the orders in Messrs. Roberts's and Melham's cases irrespective of who was seeking review. The brief allusions to the consumers thus offer little evidence that the consumers intended to petition for review. Put differently, OPC drafted the petitions in this case precisely as it would have if it intended to appeal only in its own name and not on behalf of the consumers.

Nevertheless, OPC suggests that we should not dismiss the petitions because D.C. App. R. 3(c)(7) instructs that "[a]n appeal may not be dismissed for informality of form or title of the notice of appeal" or "for failure to name a party whose intent to appeal is otherwise clear from the notice." Even assuming that Rule 3(c)(7)—which is found in the rule governing notices of appeal from Superior Court—has force here, in a case involving a petition for review from an agency decision under Rule 15, we would still reach the same conclusion. For the reasons given above, it is not "clear" to us "*from the [petition]*" that Messrs. Roberts and Melham "inten[ded] to appeal." D.C. App. R. 3(c)(7) (emphasis added). The petitions never mention that the consumers seek review of the decision, never mention them in the caption, and never refer to them in a way that suggests that they are active parties in the petition. Rather, the petitions bear the hallmarks of appeals by OPC and not the consumers.

Second, in a separate argument, OPC asks that we allow it to amend the petitions and effectively transform this case into *Matthew Roberts and Mark Melham v. D.C. Water and Sewer Authority*. We decline because OPC has not, as a threshold matter, demonstrated that we have jurisdiction to entertain its request for this equitable relief.

Although the parties dispute whether the failure to name Messrs. Roberts and Melham as petitioners carries jurisdictional weight, neither party analyzes the issue under the appropriate framework. D.C. Water contends that the defect is jurisdictional under our decision in *Patterson v. District of Columbia*. 995 A.2d 167, 170 (D.C. 2010) (holding that the "cardinal rule of appellate procedure"—that "[a] notice of appeal 'must specify the party or parties taking the appeal by naming each one in the caption or body of the notice'"—"is jurisdictional." (quoting D.C. App. R. 3(c)(1)(A))); *accord Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318 (1988) (recognizing the federal counterpart as a "jurisdictional prerequisite lead[ing] to [the] harsh result" of dismissal). As OPC observes, however, we have since departed from the approach exhibited in *Patterson* and recognized "that stringent requirements must be satisfied for a rule to have the effect of automatically stripping a court of 'jurisdiction.'" *Mathis v. D.C. Hous. Auth.*, 124 A.3d 1089, 1101 (D.C. 2015); *accord Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) ("We have urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction."). Rules falling short of such requirements are instead mandatory claims-processing rules, which do not contain jurisdictional implications. *See Deloatch v. Sessoms-Deloatch*, 229 A.3d 486, 487 (D.C. 2020).

Despite identifying this issue, neither party analyzes whether the failure to name the proper petitioners creates a jurisdictional defect under the modern framework. The modern framework requires two analytical steps: (1) determining whether the necessity of a petition for review derives from a legislature's establishment of a jurisdictional requirement and (2) ascertaining whether identification of the parties to a case is an essential component of a petition for review. *See Neill v. D.C. Pub. Emp. Rels. Bd.*, 93 A.3d 229, 238-39 (D.C. 2014). The parties address neither step. In our view, the answer is not obvious. *See* D.C. Code § 2-510 ("Upon the filing of a petition for review, the Court shall have jurisdiction of the proceeding . . . ."); *Mathis*, 124 A.3d at 1102-03 (classifying the portions of D.C. Code § 2-510 requiring a petition for review as "jurisdictional provisions"); *Neill*, 93 A.3d at 239 (parsing which parts of a request for review are "essential" such that they carry jurisdictional weight and concluding that failure to include the proper respondent in the caption is not always a jurisdictional defect); *Gonzalez v. Thaler*, 565 U.S. 134, 147-48 (2012) (suggesting that the failure to name a party may be jurisdictional because courts and respondents are left "unable to determine with certitude whether [the unnamed party] should be bound by an adverse judgment or held liable for costs or sanctions" (internal quotation omitted)).

Because OPC has not established that we may, as a jurisdictional matter, consider its proposed amendment, we decline its request to amend the petitions. As

the party seeking an equitable remedy, OPC bears the burden of demonstrating its entitlement to that relief. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971-72 (11th Cir. 2016) (en banc) (collecting cases and explaining that the party seeking equitable relief bears the burden of proof even in the context of procedural requirements such as equitable tolling). OPC failed to meet its burden here because it did not explain why we would have authority to grant the relief it requested after D.C. Water challenged our authority to do so.

To be sure, OPC argues that we can and should toll D.C. App. R. 15(a)(2)'s thirty-day deadline and allow its amendment. But whether we should exercise our discretion to grant OPC's requested amendment presupposes that we have jurisdiction to entertain such amendments. And OPC's argument that Rule 15(a)(2)'s *time limit* is nonjurisdictional and may be equitably tolled does not answer whether the rule's requirement for a valid petition for review under Rule 15(a)(3) may be similarly relaxed. If the failure to name the proper petitioners amounts to a jurisdictional defect, we may be unable to grant leave to amend the defect. *See Patterson*, 995 A.2d at 173 ("'"[H]armless error" analysis' does not apply to 'defects in a notice of appeal' because the very 'nature of a jurisdictional requirement' is that 'a litigant's failure to clear a jurisdictional hurdle can never be "harmless" or waived by a court.'" (quoting *Torres*, 487 U.S. at 317 n.3)). *But see Oil, Chem. & Atomic Workers Int'l Union v. Occupational Safety & Health Rev.*

*Comm'n*, 671 F.2d 643, 653 & n.14 (D.C. Cir. 1982) (per curiam) (granting leave to amend a petition to cure the failure to name the proper respondent but not discussing whether the requirement was jurisdictional). Rather than answering, without the aid of sufficient advocacy from the parties, whether the failure to name the proper petitioners creates a jurisdictional defect under the modern framework or whether we could grant leave to amend such a defect if it is jurisdictional, we conclude that OPC has failed to show we have jurisdiction to afford it equitable relief.[2] Accordingly, we deny its request to amend.

Because we do not reach the merits of OPC's request for equitable relief, our decision does not preclude future petitions by Messrs. Roberts and Melham in their

---

[2] Although defects in subject matter jurisdiction cannot be waived, arguments in favor of jurisdiction can be. *See Battle v. District of Columbia*, 80 A.3d 1036, 1037 n.2 (D.C. 2013) (declining to "generate" a new theory in favor of jurisdiction "sua sponte"); *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[D]efects in subject-matter jurisdiction require correction regardless of whether the error was raised in the district court."); *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 545 (10th Cir. 2016) ("[O]ur obligation to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have supported such jurisdiction[.]" (internal quotation omitted)). The burden of proving subject-matter jurisdiction still falls on the party invoking our jurisdiction—in this case, OPC. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [of federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citation omitted)).

own names that argue that the Rule 15 time limits for filing a petition should be equitably tolled under the circumstances.

### III.   Conclusion

For the foregoing reasons, we dismiss OPC's petitions for lack of standing.

*So ordered.*